*New-Haven,*<br>November,<br>1816.<br>Bunce<br>*v.*<br>Wolcott.

The other Judges were of the same opinion.

New trial not to be granted.

### Bunce and others *against* Wolcott.

THIS was a bill in chancery to redeem mortgaged premises.

The case was as follows. *Ebenezer Benton,* jun., on the 16th of *February* 1763, mortgaged the premises to *David Beekman* and *Abraham Lynsen,* of the city of *New-York,* to secure to them the payment of 428*l.* 12*s.* 6*d., New-York* currency, on the 20th of *March* next ensuing. *Benton* remained in possession until his death, which took place on the 9th of *February* 1764. On the 26th of *May* 1764, *Ruth Benton,*

The saving of the statute of limitations regarding the right of entry into lands, (*tit.* 97. *c.* 3.) applies only to such disability as existed at the time the right of entry accrued, and not to any supervenient disability.

Where it appeared, on an application to redeem mortgaged premises, by the heirs of the mortgagor, more than fifty years after his death, that the premises were omitted, while other lands were included in the inventory of his estate ; that his estate was represented insolvent ; that the widow and the mortgagees soon afterwards conveyed the premises, by several deeds, with covenants of warranty ; and that the grantee went into immediate possession, and he, and those claiming under him, had, from that time, remained in undisturbed possession ; it was held by three judges, the others waiving any decision on the point, that from those circumstances, with the great length of time, a release or extinguishment of the equity of redemption ought to be presumed.

the widow of the mortgagor, took letters of administration on his estate, and soon afterwards represented it insolvent, and procured a decree of probate appointing commissioners, and limiting a time for the exhibition of claims. On the 31st of *October* 1765, she exhibited to the court of probate an inventory of said estate, including one or two small pieces of land, but not including the premises, which was accepted and recorded ; and no further proceedings relating to said estate are to be found on the files and records of said court. On the 31st of *March* 1768, said *Ruth*, being then in possession, conveyed to *Silas Deane* all her right in the premises, in fee, with covenants of warranty and seisin. On the 26th of *April* 1770, *Beekman* and *Lynsen*, the mortgagees, conveyed the premises to said *Deane*, by a like deed. On the 2d of *April* 1772, *Deane* conveyed, in like manner, to *John Robbins*. From him the premises passed, by a quitclaim deed, on the 6th of *January* 1778, to his son, *Levi Robbins* ; who, on the 31st of *March* 1789, mortgaged them to *Thomas Seymour*, but on payment of the mortgage money, on the 6th of *March* 1798, he obtained a reconveyance. On the 23d of *November* 1803, he mortgaged them with other lands to *C. C. Deming* and *C. Barnard* ; and on the 31st of *August* 1808, he conveyed them with other lands to *Elihu White*, to whom *Deming* and *Barnard* released their mortgage. On the 1st of *December* 1814, *White* conveyed them with other lands to the defendant. Under all these conveyances, the grantees respectively, except the several mortgagees, took immediate possession, and remained in possession until alienation.

*Ebenezer Benton*, jun., at his death, left a daughter, *Elizabeth*, who was born on the 10th of *June* 1756, and was married on the 19th of *January* 1775, during her minority, to *Daniel Bunce*, one of the plaintiffs, and has ever since remained his wife.

The cause came on to be heard before the superior court in *Hartford* county, *September* term, 1816. The plaintiffs, in support of their bill, offered evidence of title in *Benton*, at the time he made the mortgage. The defendant's objected to any inquiry into *Benton's* title, on the ground that such enquiry was irrelevant, because the right of the mortgagor to redeem could not be enforced in chancery after fifteen years from the time *Deane* took possession, notwithstanding

the minority and coverture of the heir at law; and because, under the circumstances of the case, such right must be presumed to have been released and extinguished. By consent of parties, the cause was continued, without any decision upon these points, to the next term, for the purpose of taking, in the meantime, the advice of all the Judges thereon.

*New-Haven,*
November,
1816.

Bunce
*v.*
Wolcott.

*T. S. Williams* and *Johnson,* for the plaintiffs, contended, 1. That the right of redemption in equity would continue as long as a right of entry at law would subsist, under similar circumstances; and that, if the legal title had been in *Benton* at his decease, his daughter's right of entry would not be barred, as she then was, and ever since has been, under the disability of infancy, or that of coverture. They relied upon the decision in *Eaton* v. *Sanford, 2 Day's Ca.* 523. as an authority in point, and entitled to the highest respect. They also referred to *Cotterell* v. *Dutton, 4 Taun.* 826. in the *English* court of common pleas, where the same construction of a similar statute(*a*) was recognized.

(*a*) It may be useful to exhibit, at one view, our statute limiting the right of entry upon land, and the corresponding parts of the *English* statute of 21 *Jac.* 1. *c.* 16.

| Conn. Stat. *tit.* 97. *c.* 3. | Stat. 21. *Jac.* 1. *c.* 16. |
|---|---|
| *Sect.* 2. And for quieting of men's estates, and avoiding of suits: It is enacted, &c. | *Sect.* 1. For quieting of men's estates, and avoiding of suits, be it enacted, &c. that all writs of formedon in descender, formedon in remainder, and formedon in reverter, at any time hereafter to be sued or brought, of, or for any manors, lands, tenements or hereditaments, whereunto any person or persons now hath or have any title, or cause to have or pursue any such writ, shall be sued or taken within twenty years next after the end of this present session of parliament: And after the said twenty years expired, no person or persons, or any of their heirs, shall have or maintain any such writ, of or for any of the said manors, lands, tenements or hereditaments; and that all writs of formedon in descender, formedon in remainder, formedon in reverter, of any manors, lands, tenements or other hereditaments whatsoever, at any time hereaf- |

2. That no presumption of a release, or extinguishment of right, could be made against an infant, or feme-covert.

That no person or persons that now have any right or title of entry into any lands, tenements or hereditaments within this colony, now withheld from him or them, shall thereinto enter, but within three years after the tenth of *June* next, or within fifteen years next after any other title of entry accrue: and that no person or persons shall, at any time hereafter make entry, into any lands, tenements or hereditaments within this colony, but within fifteen years next after his or their right or title, which shall hereafter first descend or accrue to the same; and in default thereof, such persons so not entering, and their heirs, shall be utterly excluded and disenabled from such entry after to be made.

*Sect. 4.* Provided nevertheless, that any person or persons that is or shall be entitled to, or that hath or shall have such right or title of entry into any lands, tenements or hereditaments in this colony, be, or shall be at the time of the said right or title first descended, accrued, come or fallen, within the age of twenty-one years, *feme covert, non compos mentis,* imprisoned or beyond the seas, that then such person and persons, and his and their heir and heirs, shall or may, notwithstanding the said three years, or the said fifteen years be expired, bring his action, or make his entry as he might have done before this act; so as such person or persons, his or their heir or heirs, shall within five years next after his or their full age, discoverture, or coming of sound mind, enlargement out of prison, or coming into this country of *New-England,* or territory of *New-York,* or death, take benefit of and sue forth the same, and at no time after the said five years.

ter to be sued, or brought by occasion or means of any title or cause hereafter happening, shall be sued or taken within twenty years next after the title and cause of action first descended or fallen, and at no time after the said twenty years:

And that no person or persons that now hath any right or title of entry into any manors, lands, tenements, or hereditaments now held from him or them, shall thereinto enter, but within twenty years next after the end of this present session of parliament, or within twenty years next after any other title of entry accrued; and that no person or persons shall, at any time hereafter, make any entry into any lands, tenements, or hereditaments, but within twenty years next after his or their right or title, which shall hereafter first descend or accrue to the same; and in default thereof, such persons so not entering, and their heirs, shall be utterly excluded and disabled from such entry after to be made; any former law or statute to the contrary notwithstanding.

*Sect. 2.* Provided nevertheless, that if any person or persons that is or shall be entitled to such writ or writs, or that hath or shall have such right or title of entry, be, or shall be, at the time of the said right or title first descended, accrued, come or fallen, within the age of one and twenty years, *feme covert, non compos mentis,* imprisoned or beyond the seas, that then such person and persons, and his and their heir and heirs, shall or may, notwithstanding the said twenty years be expired, bring his action or make his entry as he might have done before this act; so as such person and persons, or his or their heir and heirs, shall, within ten years next after his and their full age, discoverture, coming of sound mind, enlargement out of prison, or coming into this realm, or death, take benefit of and sue forth the same, and at no time after the said ten years.

*New-Haven*,
November,
1816.

Bunce
*v*
Wolcott.

*Sherman* and *Trumbull*, for the defendants, contend, 1. That the equity of redemption was barred by an adverse possession of the mortgagees, and those who claim under them, for more than fifteen years. *Skinner* v. *Smith*, 1 *Day's Ca*. 124. *Lockwood* v. *Lockwood*, 1 *Day's Ca*. 295. This rule is universal, with the exception of the cases specified in the proviso of our statute, *tit*. 97. *c*. 3. *s*. 4. The description of persons within the proviso, are those, and those only, who, *at the time* the right or title *first descended or accrued*, were within the age of twenty-one years, feme-covert, &c. And as to those persons, the saving is expressly limited to five years after the removal of the disability. They cited *Stowel* v. Lord *Zouch*, 1 *Plowd*. 355, 6. 361. 375. upon the statute of fines, 4 *Hen*. 4. *c*. 24. *Doe* d. *George & ux*. v. *Jesson*, 6 *East* 80. upon the statute of limitations, 21 *Jac*. 1. *c*. 16. *Eager & ux*. v. *The Commonwealth & al*. 4 *Mass. Rep*. 182. upon a statute of that state limiting the time of bringing writs of error ; and the opinion of *Smith*, J. in *Bush* v. *Bradley*, 4 *Day's Ca*. 298. 307. *& seq*. upon the statute now in question. Upon a different construction, this would be no " statute of repose."

2. That the facts in this case induce a presumption that there has been a release of the equity of redemption. 2 *Wms. Saund*. 175. *Goodtitle* v. *Baldwin*, 11 *East*, 488. *Eldridge* v. *Knott & al. Cowp*. 214. *Peake's Ev*. 23. *Jones* v. *Tuberville*, 2 *Ves*. jun. 11. 3 *Cruise's Dig*. 567.

SWIFT, Ch. J. Courts have gone great lengths in presuming grants, where it conduced to justice, and quieted men in their possessions.

Mere length of time less than what is prescribed by statute, and in cases where the statute operates, can never be a presumptive bar. Length of time, accompanied by circumstances, which render it probable a grant was made, may be a presumptive bar. So length of time, unaccompanied by such circumstances, may be a bar where there is no statute of limitation, in analogy to statutes in similar cases. Where a statute limits a time, it is a peremptory bar, and may be pleaded ; but where there is no statute, length of time is matter of presumptive evidence to be left to the jury, and may be rebutted by circumstances which go to disprove the probable existence of a grant. No presumption of a grant

could be made where it would be impossible ; as where the supposed grantor had no legal right or capacity to make the grant.

In this case, it is not necessary to presume any act to have been done by an infant, or feme-covert, to quiet the long possession of the defendant, and those under whom he claims. From the circumstance that the land in question was not comprehended in the inventory of *Benton's* estate, it is highly probable that he had released the equity of redemption in his life time, and the deed had been lost. If he did not release it, then it is probable, as the estate was insolvent, it was disposed of in due course of law for the payment of the debts, and the evidence has been lost. This is confirmed by the circumstance, that the mortgagees gave deeds of warranty of the land, and the purchaser went into immediate possession ; which would not probably have been done, if the title had not been quieted. To this is to be added the great length of time which has elapsed ; and it cannot be supposed, that the petitioners, some of whom were *sui juris*, would have been so long silent, if it had been understood that they had any right. Under these circumstances, there can be no doubt the equity of redemption was extinguished ; and though there is no proof of a conveyance, yet we are warranted to presume it.

With respect to the other point, it may be remarked, it has been long recognised in this state, that a statute of limitation can never begin to run during the existence of a disability, though when it once begins, it will not be interrupted by an intervening disability. If a female should be an infant when the title accrued, and should intermarry before she comes of age, she would be within the saving of the statute till she should become discovert ; but if being of full age when the title accrued, she should intermarry within fifteen years, she would not be within the proviso of the statute ; so that the same person, in certain cases, could take advantage of two successive disabilities. This doctrine has been sanctioned by a single decision in this Court ; (*Eaton* v. *Sanford*, 2 *Day's Ca.* 523.) but, I apprehend, it is not warranted by a sound construction of the statute. The saving clause is expressly limited to disabilities existing *at the time the title accrued.* Nor is the proposition correct, that the statute never begins to run against a person under a disability.

Suppose that the party claiming is an infant when the title accrues ; if fifteen years run during his infancy, he has but *five* years after he comes of full age to make his entry. This clearly shews, that the statute operates against him during the disability. Indeed, the statute always begins to run against a man the moment he is disseised, whether he is under a disability or not : all the difference is, that an additional time is allowed where a disability exists, after the removal of it. The correct rule, sanctioned by all the authorities, is, that when the statute once begins to run, a supervenient disability will not stop it. Hence it follows, that no person can ever take the benefit of two successive disabilities ; a construction strictly conformable to the letter and meaning of the statute. But in the construction heretofore given in this state, a succession of disabilities can be united ; old claims may be preserved, till all evidence respecting them is obliterated ; and the beneficial objects of the statute may be defeated. It appears to me, that the case of *Eaton* v. *Sanford* is a departure from principle ; that the construction given to the statute is not warranted by the fair import of it ; and that it ought not to be considered as possessing the authority of a precedent.

I am of opinion, on both points, that the petition ought not to be sustained.

EDMOND, J. Two questions are presented for the consideration of the court. One is, whether from lapse of time, and under all the circumstances attending this case, the court may and ought to presume a grant, in order to quiet the respondents in their possession ? I do not consider it necessary to determine this question, as the court are unanimous on the other ; and that is sufficient to decide the case.

The other is, whether the proviso, or saving in the statute of limitations against the right of entry into lands, &c. *tit.* 97. *c.* 3. extends to supervenient disabilities, or to such only as exist at the time the right of entry accrues ?

To decide this question, there appears to me no other difficulty than that which arises from the necessity to deny the propriety of a former decision, (*Sanford* v. *Eaton*, 2 *Day's Ca.* 523.)—a necessity always to be regretted ; or to depart from what I considered, at the time the case of *Bush*

and wife & al. v. Bradley, 4 Day's Ca. 298. was argued, and still consider, as the plain and obvious import of the statute. By the second section, it is enacted, that " no person or persons shall, at any time hereafter, make entry into any lands, tenements or hereditaments within this colony, but within fifteen years *next after* his or their right or title, which shall hereafter *first descend* or accrue to the same, &c." In this section of the act there is no saving clause for disabilities of any sort; nor in any other part of the statute is there any saving against its positive provisions, except what is to be found under the proviso which forms the fourth section. To this, then, we must look, to discover, not who *ought to be,* but *who are,* the subjects of it, and how far their exemption extends. Examined with this view, it appears to me difficult to perceive how it can possibly be construed to apply or extend to any other than those, who, at the *time* of passing the act, *had,* or thereafter should *have,* " a right or title of entry into any lands," &c. and who " be" (that is, at the time) " or shall be, *at the time of the said right or title first descended, accrued, come or fallen, within the age of twenty-one years ;*" or shall, at *the time* of said right or title first descended, accrued, &c. be under some one or more of the disabilities enumerated, and shall prosecute their claims within five years next after the disability or disabilities, which *existed at the time* the right or title first descended, &c. are removed. I say, " disability or disabilities," because a person may be under several of the disabilities specified, *at the time* the title accrues; and in such case, the person so situated may avail him or herself of either; and it will always be a sufficient answer to an objector to such an election, to say, the disability on which *I rely* is pointed out by the proviso; it existed *at the time my right or title accrued;* I have prosecuted my claim within the time allowed after its discontinuance, and come within both the letter and spirit of the law. But where a *single* disability only exists at the time the right of entry accrues, and the five years after the discontinuance of *that* disability have elapsed, the statute immediately attaches, and the party so neglecting to prosecute can never avail himself of any other or supervenient disability, because the statute recognizes no other than such as *actually existed,* or should *exist,*

*at the time when the right of entry first commenced;* and every *after* disability may be said to want, and is, in fact, destitute of that essential qualification.

I should advise that judgment be given for the respondent.

SMITH, BALDWIN and GODDARD, Js. concurred with Judge *Edmond* in waiving a decision upon the question of presumption; and were also of opinion with him and the rest of the court, that the suit not having been commenced within five years after the termination of the disability which existed at the time the title first accrued, no supervenient disability would save the case from the limitation of the statute.

BRAINARD, J. concurred with the Chief Justice on both points.

HOSMER, J. The petitioners, heirs of the mortgagor, make their application to redeem mortgaged estate. The defendant, a purchaser for valuable consideration, opposes on this ground, that the mortgagees and their assigns, have, for almost half a century, been in the undisputed possession of the estate, using it as their own. It is stated by the parties, that when the title first accrued, *Elizabeth Bunce,* one of the petitioners, was a minor, and afterwards, before she arrived to lawful age, intermarried with her present husband, and has remained under coverture ever since.

If *Elizabeth* was, by law, obliged to enter on the premises, within five years after her attaining the age of twenty-one, her right has long since been barred. The statute for quieting men's estates and avoiding suits, having limited the period of entry on property withheld, to fifteen years, by way of exception provides, that if the person who has right of entry shall, *at the time of the right first descended or accrued,* be within the age of twenty-one years, *feme covert, non compos mentis,* imprisoned, or beyond seas, such person shall have five years in which to make entry, or bring his action, after the removal of his disability. Of consequence, it has been argued by the petitioners, that as *Elizabeth,* at the descent of the title in her, was a minor, and before she attained full age, intermarried, and has ever since remained under coverture, the law has not commenced its operation

against her. This supposed consequence I utterly deny. It is a conclusion without any premises to authorize it. The proviso of the statute, regards, solely and exclusively, the disabilities existing *at the time of the right or title first accrued.* " If this disability be once removed," to use the words of *Ashhurst,* J. " the time must continue to run, notwithstanding any subsequent disability, either voluntary or involuntary." This construction is authorized by the strongest reasons. It is in accordance with the explicit and intelligible expressions of the statute, which, in so many words, alone embrace disabilities existing at the time *of the right or title first descended or accrued.* At the same time, it best comports with private justice and public convenience. It allows a sufficiently extended range to the act made *for quieting possession,* and preventing unreasonable delay in the assertion of claims. It avoids the intolerable inconvenience of accumulated successive disabilities, which, for an interminable period, might subvert titles apparently well established, and produce the most ruinous instability. And what is of no small importance, it is in perfect conformity with the judicial decisions of other states. 3 *Bac. Abr.* 206. (*Wils.* edit.) *Stowel* v. Lord *Zouch, Plowd.* 356. *Doe* d. Count *Duroure* v. *Jones,* 4 *Term Rep.* 300. *Doe* d. *George & ux.* v. *Jesson,* 6 *East,* 80. *Eager & ux.* v. *Commonwealth & al.* 4 *Mass. Rep.* 182.

From the facts agreed on, I am likewise of opinion, that the Court is authorized to presume a grant of the equity of redemption to the original mortgagees, or to *Silas Deane,* their grantee.

The mortgage in question was made in *February* 1763. In the year 1764, *Ebenezer Benton* jun., the mortgagor, died. *Ruth Benton,* his wife, became administratrix of his estate, and represented it insolvent. In *March* of the year 1768, she, by a deed of warranty, conveyed the estate mortgaged, so far as was in her power, to *Silas Deane.* In the year 1770, the mortgagees, by a similar deed, granted the premises to the same *Silas Deane,* who immediately took the possession. From that period to the present moment, he, and his assigns, have remained in the possession, uninterruptedly, and without a question. From these facts the inference is fairly warranted, that the equity of redemption was transferred. After the lapse of fifteen years, if the

*New-Haven,*
November,
1816.

Bunce
*v.*
Wolcott.

mortgagee is in pessession, the mortgagor is not permitted to redeem, unless the delay is satisfactorily accounted for. *Skinner* v. *Smith,* 1 *Day's Ca.* 127. On the principle of quieting possession, " for the furtherance of justice and the sake of peace," the court, after a considerable length of time, will presume a grant. *Eldridge* v. *Knott & al. Cowp.* 214. *Knight* v. *Halsey,* 2 *Bos. & Pul.* 206. 1 *Pow. Mort.* 408. *Jackson,* d. *M'Donald* v. *M'Call,* 10 *Johns. Rep.* 377. Nothing can be more reasonable. For example, " it cannot be supposed that any man would suffer his neighbour to obstruct the light of his windows, and render his house uncomfortable, or to use a way with carts and carriages over his meadows, for twenty years successively, unless some agreement had been made between the parties to that effect, of which the usage is evidence." *Phill. Ev.* 120. As little can any one presume, that for more than forty years, the mortgagees and their assigns, should have possessed the premises exclusively, and absolutely, as their own ; that it should have been sold by deeds of warranty, soon after the death of the mortgagor, by his wife and others ; and from that period to the present, that the heirs of the mortgagor should have looked on, without the interposition of any claim ; and notwithstanding this, that the equity of redemption should remain. Long continued possession implies title. If there were a different right, the probability is, it would have been asserted. It is for the interests of justice that it should be so ; and a conviction is produced by it, which the mind cannot resist. It would be monstrous, if nearly half a century having elapsed, after valuable improvements and repeated purchases, the title, apparently so stable, should be subverted by a latent claim, in opposition to every reasonable calculation. Nothing short of statute disabilities, or other circumstances equivalent, ought, under such circumstances, to repel the presumption of a grant.

The petitioners rely on the impossibility of the thing. Although the estate does not of record appear to have been insolvent, I think it may be inferred, and that the deed with warranty given by the administratrix, was intended to transfer the equity of redemption. But, let it be admitted, that this supposition is incorrect, and that the object of the deed was, to grant the estate of *Ruth,* beyond the boundaries of the mortgage ; what opposes the possibility, that the equity

*New-Haven,*
*November,*
*1816.*

was released to the mortgagees by the mortgagor? This would be in perfect accordance with their grant of the premises in fee simple, to *Silas Deane.*

Besides, after *Elizabeth Bunce* attained the age of twenty-one, which was in the year 1777, may not a deed from the heirs to the tenant in possession, be fairly presumed? Nearly forty years have elapsed, on which to found this presumption.

To this it is replied, that *Elizabeth Bunce* was under coverture. What then? This, under the positive provisions of the statute, if it existed when the title first descended, would have constituted a disability. But, upon the point of presumption, I do not know that it is entitled to any weight. *Elizabeth* and her husband were capable of conveying the property; it was their interest to do it, on sufficient consideration; and the facts in this case, warrant the presumption of their having done it.

TRUMBULL, J. being related to the defendant's grantor with warranty, and GOULD, J. having been of counsel in the cause, gave no opinion.

Judgment to be given for the defendant.