## GRISWOLD *against* BUTLER and wife.

3  227
74  112

*G.*, the original proprietor of the land in question, was disseised thereof, on the 12th of *November*, 1793. On the 9th of *April* preceding, the county court, on a representation of the select-men of the town, having found him *non compos mentis*, appointed a conservator to him, who accepted the trust, and retained it until the 27th of *June*, 1796, when he resigned it. On the 17th of *January*, 1798, a similar appointment was made, which continued until the 24th of *July* 1802, when *G.* died, leaving *M.*, an only child, who was then *non compos mentis*, and so continued, until her death, on the 26th of *February*, 1817. Within five years afterwards, the plaintiff, as heir of *M.* brought ejectment against those, who were in possession, claiming under the disseisor; neither *G.*, nor *M.*, nor any person claiming under them, having before entered, or brought his action. Held, that assuming the disability of *G.*, to be established, by the finding, and appointment of the county court, during the continuance of such appointment; yet as soon as the appointment first made ceased, the statute of limitations began its operation, and no subsequent disability, either of *G.* or of *M.* would protect the title. Held, further, that if *G.* were *non compos mentis* from the disseisin to his death, it would make no difference in the result; for the saving of the statute extends only to the person to whom the right of entry first accrued; and relates only to the disability then existing; and the plaintiff not being that person, and the present action not having been brought within five years after the termination of that disability, the right is barred.

There is no saving in the statute of limitations for any disability in the heir, supervenient to the disability of the person to whom the right of entry first accrued.

It is not universally true, that in cases of disability, five years are to be allowed *in addition* to the fifteen years limited by the statute; for, in certain

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler.

cases, the five years provided for the disabled person, after the removal of his disability, or the five years provided for the heirs of a disabled person, after his death, may be *a part* of the fifteen years, which constitute a bar.

A deed, executed by a person under a conservator, with the consent of such conservator, but without authority from the county court, is void ; and is not admisible as evidence of a licence to the grantee to enter.

The possession of the grantee, in such case, is, *prima facie*, under a claim of title in himself ; and is, therefore, adverse.

THIS was an action of ejectment, brought in *March* 1818, for land in *Windsor*, being part of the real estate that belonged to *Mercy Weller*, deceased.

The cause was tried at *Hartford, February* term, 1819, before *Trumbull, Hosmer* and *Peters*, Js.

The plaintiff claimed the land in question as heir at law to *Mercy Weller*, who was the only child of *Hezekiah Griswold;* and, in support of this claim, read a deed of bargain and sale from one *Elihu Griswold*, conveying the demanded premises to said *Hezekiah*, dated the third of *April*, 1786, when the latter went into possession. On an application by the select-men of *Windsor*, stating that said *Hezekiah* was possessed of a valuable real estate, and had become, through age and bodily infirmity, impotent, and wholly incapable of managing his business, or taking care of himself or his estate, the county court, on the 9th of *April*, 1793, having made due enquiry, and found the representation true, appointed said *Elihu Griswold* conservator, to take charge of the person and estate of said *Hezekiah*. This conservator accepted the trust, and retained it until the 27th of *June*, 1796, and then resigned it. On the 17th of *January*, 1798, the county court, on a similar application, appointed *George Griswold* conservator, who accepted the trust, and retained it, until the death of said *Hezekiah*, which took place on the 24th of *July*, 1802. *Mercy Weller*, who was then unmarried, survived said *Hezekiah*, until the 26th of *February*, 1817, when she died.

The defendants contended, that the title to the demanded premises was in the heirs of one *John Griswold*, deceased ; and that they, the defendants, were in possession, and held, as guardians to those heirs, who were minors. To establish such title, the defendants offered to read in evidence certain instruments, purporting to be deeds of bargain and sale, *viz.* a deed of release and quit-claim, dated the 12th of *November*, 1793, executed by said *Hezekiah*, with the approbation of *Elihu Griswold*, as conservator, (but without authority from the

county court) conveying the land in question to one *Abner Weller ;* also, a deed of bargain and sale, dated the 14th of *October,* 1794, from *Abner Weller* to *Elihu Griswold,* conveying the same land ; and a deed from *Elihu Griswold* to *John Griswold,* dated the 20th of *September,* 1802. Under these deeds the defendants claimed, that they, and those under whom they claimed title, had been in possession of the demanded premises, from the 12th of *November,* 1793, to the day on which this suit was commenced. To the reading of the first mentioned deed the plaintiff objected, on the ground that it was utterly void. The court decided, that it could not go to the jury, for the purpose claimed by the defendants, but admitted it for the purpose of shewing that *Abner Weller* entered by the licence and permission of said *Hezekiah* and his conservator.

The plaintiff, on his part, claimed, that during the whole period of time from the 9th of *April,* 1793, to the death of said *Hezekiah,* on the 24th of *July,* 1802, and especially from the 26th of *June,* 1796, to the 17th of *January,* 1798, said *Hezekiah* was *non compos mentis,* and wholly incapable of transacting business, or making any contract; that *Mercy Weller,* at all times during her life, was naturally wanting in understanding, and incapable of transacting ordinary domestic concerns, or making any contract ; that *Abner Weller,* on the 12th of *November,* 1793, entered into the possession of the demanded premises, with the consent of said *Hezekiah* and his conservator ; and that the occupation of the premises, by the defendants, and those under whom they claimed, was at no time adverse to, but with the consent of, said *Hezekiah* and his conservator, until the day of his death, and afterwards with the consent of *Mercy Weller,* and her conservator, lawfully appointed, and in no instance adverse to her possession. The decision of these facts, supported by the testimony of competent witnesses, the plaintiff claimed should be left to the jury. The court charged the jury as follows : " If you find that *Mercy Weller* was an idiot and *non compos mentis,* from the death of said *Hezekiah* to her own death, her title is protected against any adverse possession, by others, and your verdict must be for the plaintiff; but if you find, that she was not, during that time, *non compos mentis,* the case must turn entirely on the defendants' claim by fifteen years possession. The question, then, is, whether the defendants, and those under whom they claim, have entered, and held the land demanded,

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler.

by a continued adverse possession of more than fifteen years. A possession, to be adverse, must commence by an actual disseisin of the lawful owner ; and must be continued, in the same manner, for more than fifteen years, in order to gain a title by it ; for a lawful possession acquires no title under the statute. If, then, although you should not be of opinion, that *Mercy Weller* was *non compos,* as was claimed ; yet if you find, that the original entry and possession, by those under whom the defendants claim, was lawful, and by licence and permission of said *Hezekiah* and his conservator ; and that there has been no subsequent act, which amounts to an actual ouster ; you will find for the plaintiff. In that case, your verdict must be against *Richard Butler* only, that he has done wrong and disseisin, and that the plaintiff recover against him the seisin and possession of the land demanded, with his damages and costs ; otherwise, you will find for the defendants." The jury returned a verdict for the plaintiff, against the defendant *Richard Butler ;* and the latter, thereupon, moved for a new trial, on the ground that the deed from *Hezekiah Griswold* to *Abner Weller* ought to have been admitted, for the purpose for which it was offered, and that the charge was incorrect. The court reserved the motion.

The case was argued before the supreme court of errors, at *New-Haven, June* term, 1819, by *T. S. Williams* and *Trumbull,* in support of the motion, and by *Daggett* and *N. Smith,* contra ; and was continued *to advise.*

In support of the motion, it was contended, 1. That *Abner Weller's* taking possession of the land, under a deed from *Hezekiah Goodrich,* claiming it as his own, and excluding all others, was equivalent to an ouster ; and the deed ought to have been admitted for that purpose. *Jackson,* d. *Dunbar* and *Thorn* v. *Todd,* 2 *Caines* 185.

2. That if the deed was absolutely void, it was not good as *a licence.*

3. That if *Abner Weller* did enter by licence of the owner, as tenant at will, his subsequent conveyance, and the entry under it, amounted to an ouster.

4. That the charge was incorrect, inasmuch as it allowed *Mercy Weller,* to take advantage of her father's disability and then of her own, thus uniting two successive disabilities to

protect the same right. *Bunce & al.* v. *Wolcott*, 2 *Conn. Rep.* 27.

5. That the direction to find a verdict against the husband alone, was incorrect. *Reeve's Dom. Rel.* 135.

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler

HOSMER, Ch. J. The deed of *Hezekiah Griswold*, executed with the consent of his conservator, was undoubtedly void. The statute concerning idiots and others takes the property placed under the conservation of another out of his custody, and suspends his right to dispose of it. Although neither an idiot nor lunatic, the person in ward is dealt with as if he were of that character; and the putting him under a conservator is in the nature of a commission on the writ *de lunatico inquirendo.* *Gibson* v. *Jeyes*, 6 *Ves.* 273. *Dridgeway* v. *Darwin*, 8 *Ves.* 65. Ex parte *Cranmer*, 12 *Ves.* 445. *Barker's* case, 2 *Johns. Ch. Rep.* 232. The assent of the conservator to the deed imparted no authority. Of the personalty he has the entire disposition; but over real estate he has no power, unless it is conferred on him by the county court.

Whether the disability of *Mercy Weller* was so tacked to the prior disability of her father, is the principal question. The superior court was of this opinion; but it is now contended, that the proviso of the " act for quieting men's estates and avoiding of suits," admits the allowance of one disability only. The statute enacts, that no person shall enter into any lands, tenements or hereditaments, unless within fifteen years after his right or title of entry shall first accrue. Were this the sole provision, it would operate universally; as well on those who are incapable of claiming their rights, and vindicating their injuries, as on those who are not. To obviate injustice so palpable, the legislature subjoined the following proviso: " Provided nevertheless, that if any person or persons that is, or shall be, entitled to any lands &c. shall be, at the time the said right or title first descended, accrued, came or fallen, *non compos mentis* &c. that then such person or persons, and his or their heir or heirs, shall or may, notwithstanding the said fifteen years be expired, bring his action, or make his entry, as he might have done before this act; so as such person or persons, his or their heir or heirs shall within five years next after his or their coming of sound mind &c. or coming into this country of *New-England*, &c. or death, take benefit of, &c. the same," &c.

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler.

So far as the construction of the above clause depends on precedent it remains unsettled. It is true, that in *Doe* d. *George & al.* v. *Jesson,* 6 *East,* 80., it was adjudged, that the proviso protected the disability of the ancestor only, and not the succeeding incapacity of the heir; but in *Cotterel* v. *Dutton,* 4 *Taun.* 825., it has since been determined, that there may exist two successive legal disabilities, in different persons, within the before mentioned proviso. In the latter case, it was said, that the judgment in in *Doe* d. *George & al.* v. *Jesson* was not agreeable to the profession at the time; and the following principle is considered as correct: " that the ten years do not run at all, while there is a continuance of disabilities." In *Wolcott* v. *Bunce,* 2 *Conn. Rep.* 27., it was adjudged, that two successive disabilities in the same person were not within the proviso of the act, because it regards solely and exclusively the disabilities existing in the person at the time the right or title first accrued. But whether there may not be successive legal disabilities in different persons, was not an enquiry presented by the case, nor the subject of argument or opinion. It is a question essentially different from the former, and resting on entirely different considerations.

*Mercy Weller* was precisely within the letter of the statute. The only restriction on the disabilities mentioned in the proviso of the act, is, that they must exist at the time of the title first accrued. Now, *Mercy Weller* was *non compos,* when the estate demanded descended upon her, and as incapable, both actually and legally, of taking any measure to secure her title, as if she had no existence. To warrant the wresting from a person rendered incapable by insanity her estate, because she does not act rationally, and perform impossibilities, demands a very clear expression of the legislative intent. In *Doe* d. *George & al.* v. *Jesson,* it was supposed, that the word " death" in the latter part of the proviso, has this operation; but by a process of argument not very intelligible. On an attentive examination of the statute, I find nothing to warrant this construction. The word " death" refers to the prior expression, " person on persons," and the meaning of that expression is to be ascertained, before the proviso can be understood. Now, " the person or persons" spoken of, are those who have a right of entry into lands, and who, at the time the right originated, were under one of the specific incapacities. This is the entire description of them; and to the person or

persons thus described the word " death" refers. It is impossible to imagine a representation, which more appropriately includes *Mercy Weller*. On the death of her father, her title accrued ; at which time he was *non compos mentis*.

The reason and spirit of the act perfectly coincide with the literal construction of it. The ultimate object of the law of limitation is to prevent controversy, and give stability to titles apparently well founded. The property of an individual, however, is not unreasonably wrested from him, and transferred to the person who has no title, but actual possession, on account of his merits. It is because the owner has been guilty of *gross neglect*. " For" says Sir *Wm. Blackstone*, 3 *Comm.* 188., " if he be negligent for a long and unreasonable time, the law refuses afterwards to lend him any assistance, to recover the possession merely, both to punish his neglect, (*nam leges vigilantibus, non dormientibus, subvenient,*) and also because it is presumed, that the supposed wrong-doer has, in such a length of time, procured a legal title ; or otherwise he would have been sued." But where there has been no *laches*, the injustice of withdrawing from a person the protection of the laws is too flagrant to admit of countenance. Hence, in the act of limitation on which I have been commenting, as well as in others, and in presumptions at common law, if the person whose title is in question has been under an incapacity of protecting himself, or of pursuing his rights, he is not stripped of his property, by reason of lapse of time, and the unjust occupation of another. Now, to *Mercy Weller,* and to her father, no neglect could be ascribed. Nothing but the most imperious necessity, arising from the unequivocal construction of the law, would justify me to myself in wresting from this incapable person her estate. I see no such necessity, no clear construction of the act against her. By the letter of it, I think she is protected ; and what is of more importance, by its reason and spirit.

I am far from denying, that a law may be so definitely expressed, as to indicate the intention of the legislature to sanction an act in conformity with general convenience, although bearing hard on an individual. But the most intelligible and definite expressions are requisite to authorise a construction, which opposes natural justice, and the analogy of principle. I am satisfied, that an exposition of the law taking from *Mercy Weller* her estate, because she omitted to do an impossibility,

30

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler.

that is, to act rationally when deprived of reason, is unfounded.

The charge to the jury directing them to render their verdict against *Richard Butler* only, was manifestly correct; and, in all events, can constitute no reason for a new trial.   Justice can never require, in behalf of the defendants, a rehearing, that the defendant's wife may be included in the judgment.

PETERS, J. was of the same opinion.

BRISTOL, J.    From the facts in this case, it appears, that on the 12th of *November,* 1793, *Hezekiah Griswold,* under whom the plaintiff claims title, was disseised of the demanded premises, by *Abner Weller,* who entered under a deed, executed by said *Griswold,* with the consent of his conservator, but without the approbation of the county court. The defendant claimed the land, by fifteen years adverse possession.   *Hezekiah Griswold* continued disseised until his death, on the 24th day of *July,* 1802; a period of about nine years; leaving *Mercy Weller,* who never entered on the premises, but died disseised in 1817.   The plaintiff introduced evidence tending to shew, that *Mercy Weller,* at the death of *Hezekiah Griswold,* was *non compos mentis,* and so continued, until her own death, on the 26th of *February,* 1817; and contended, that the present plaintiff, being an heir of *Mercy Weller,* having brought this action within five years from her death, was not barred of his entry upon the land.   It appears from the motion, that the plaintiff insisted, that *Hezekiah Griswold* was *non compos mentis* from the time of the disseisin till his death; and that *Mercy Weller* was likewise *non compos mentis,* from the death of *Hezekiah Griswold,* till her own death; and these claims, if they had been submitted to the jury, and found *true,* would have constituted distinct, though continued disabilities, from the time of the disseisin until 1817.   But the court, in their charge to the jury, omit to notice the disability of *Hezekiah Griswold;* and instruct them, that if " *Mercy Weller* was an idiot and *non compos* from the death of *Hezekiah Griswold,* until her own death, her title is protected against any adverse possession, by others; and your verdict must be for the plaintiff."

If this opinion is not correct, there must be a new trial : and in considering the point, we must take it for granted, that *Hezekiah Griswold* was not under a disability during the *whole time* he was disseised, as will be more fully shown, in another part of this opinion.

In support of the charge, it may be urged, that although *Hezekiah Griswold* was disseised in 1793 ; although he was competent to assert his rights, and continued so until his death ; although the statute began to run at the time of the disseisin, and continued to run for nine years until his death ; yet the estate descended to a person, who was incapable to protect her own rights, and therefore, the title was not lost, by the disseisin, during the life of *Mercy Weller ;* and if the whole time of *Mercy Weller's* disseisin is rejected from the computation of time, there will not remain fifteen years of adverse possession in the defendant, and those under whom he claims ; and that the title first accrued to the plaintiff, by the death of *Mercy Weller* in 1817 ; and he is, of course, protected, by the savings of the statute.

To admit this reasoning as correct would be overturning the settled doctrines of the law, on all the statutes of limitation ; and its pernicious consequences, in unsettling titles heretofore deemed secure, render the subject deeply interesting to the holders of real estate.

In the case of *Stowel* v. Lord *Zouch,* 1 *Plowd. Rep.* 353. decided as long since as the reign of *Elizabeth,* it appeared, that the defendant claimed the land, by virtue of a fine with proclamations, levied by Lord *Zouch,* ancestor of the defendant ; that the plaintiff's grandfather, *John Stowel,* was the owner of the land ; and that Lord *Zouch* was a disseisor, when the fine was levied. By the statute 4 *H.* 7. five years were allowed after a fine with proclamations, for the real owner to make entry on the land, and avoid the fine, with a proviso for those who were under disabilities. *John Stowel* lived about two years after the fine was levied, free from any disability, when he died, and the estate descended to *Thomas Stowel,* the defendant, then an infant about six years old ; who entered on the land, within one year after he attained to the age of twenty-one years. If the period of the defendant's infancy was to be rejected from the computation, he was not barred ; but if the five years, having begun to run in the life of the defendant's ancestor, continued to run after his death,

Hartford,
June,
1820.

Griswold
v.
Butler.

notwithstanding the infancy of *Thomas*, the title was lost, by lapse of time.    And the court, after much deliberation, decided, that the *five years* given by the statute of 4 *H.* 7. " first attached in the ancestor's life ; and in such case, those *five years* being once commenced, there shall not be any intermission, or interruption of them ; but the heir, though within age, must claim within those five years, or he shall be barred ; and he shall not have other five years after his full age."

So, in the case of *Doe* d. *Griggs* & al. v. *Shane*, 4 *Term Rep.* 306. *in not.* it appeared in evidence, that the person under whom the lessors of the plaintiff claimed, and to bar whom a fine was set up, was of *sound mind*, when the fine was levied ; but that he became insane about two years afterwards ; and the question was, whether the time continued to run against him, while in that state ; for if it did not, the lessors of the plaintiff had made their entry in time.    *Erskine*, for the plaintiff, said, that the current of authorities, on looking into them, was so strong against him, that he would not pretend to argue the question : that though *Brown* and *Saunders* had said in *Plowd.* 366., that in such case the fine would not run, yet that all the authorities were the other way ; and so was the determination in that case.    " The court said he was right in giving up the point ; for it was too plain to be disputed."

It will be remarked, that the disability in the above mentioned case, was involuntary, proceeding from the act of God : but the rule, that when a statute of limitations had once begun to run, nothing should arrest its progress, not even the visitations of Heaven, was considered to be too undeniably established to admit of argument ; and the distinction between voluntary and involuntary disabilities, utterly exploded.

In the case of *Doe* d. *Duroure* v. *Jones*, 4 *Term Rep.* 300, the lessor of the plaintiff, when the fine was levied and proclaimed, was an infant ; but attained his full age, in the month of *February*, 1784 ; he was then at large in *England*, and so continued for about ten months, when he was imprisoned, for debt, and detained in prison until *September*, 1789 ; a period of more than five years after attaining his full age : and if the statute continued to run, notwithstanding this imprisonment, the plaintiff was barred of a recovery.    In behalf of the plaintiff, it was again urged, that the legislature intended, the lessor of the plaintiff should have *five years*, clear from any disabili-

ty, to prosecute his claim ; unless the disability was contracted, by his own voluntary act: and it was further urged, that imprisonment for debt was an involuntary disability. Lord Kenyon, after disposing of the case upon another point, with respect to this, says,·"it is not fit, that we should be silent, lest our silence should be deemed an acquiescence with the plaintiff's argument. I confess, I never heard it doubted, till the discussion of this case, whether, when any of the statutes of limitation had begun to run, a subsequent disability would stop their running. If the disability would have such an operation on the construction of one of those statutes, it would also on the others. I am very clearly of opinion, on the *words* of the statute of fines ; on the uniform construction of all the statutes of limitation, down to the present moment; and on the generally received opinion of the profession on the subject ; that this question ought not now to be disturbed. It would be mischievous to refine, and to make nice distinctions, between the cases of voluntary and involuntary disabilities ; but in both cases, when the disability is once removed, the time begins to run." And of this opinion was the whole court.

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler.

These are the principles, which have been uniformly adopted, in the construction of statutes similar to the one under consideration. There is no case, I may venture to say, of a different aspect ; and I believe the same principles have been frequently recognized, by our own courts, even previous to the case of *Bunce* & al. v. *Wolcott.* There is nothing to support the contrary doctrine, but the principles advanced by *Saunders* and *Brown*, in the case in *Plowden ;* which were then overruled, by a great majority of the court; and those contended for by counsel, in the case of *Duroure* v. *Jones*, and which were again rejected, by the whole court of *King's Bench.*

Some notice, perhaps, ought to be taken of the motion for a new trial, in order to shew, that the charge cannot be supported, unless on the broad ground, which I have already considered.

If *Hezekiah Griswold* was under a disability from the time of his disseisin until his death in 1802, leaving *Mercy Weller,* his heir at law, under a disability, the case would require the application of different principles, and perhaps deserve more consideration. This fact, however, is not conceded by the motion, nor found by the jury. The motion shews, that upon

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler.

the application of the select-men of *Windsor*, on the 9th of *April*, 1793, shewing, that *Hezekiah Griswold* was *non compos mentis*, the court appointed *Elihu Griswold*, conservator of said *Hezekiah*. *Elihu Griswold* continued conservator until the 27th day of *June*, 1796, when he resigned his trust ; and no other conservator was appointed until the 17th day of *January*, 1798, when *George Griswold* was appointed, by the county court, and accepted his trust. This appointment continued till the death of *Hezekiah*, in 1802.

From the 27th day of *June*, 1796, to the 17th of *January*, 1798, he had no conservator, and for aught appears, was of sound mind. If, then, the appointment of a conservator, by the county court, is evidence against the world, and for all purposes, that *Hezekiah Griswold* was in reality *non compos*, (upon which it is unnecessary to express any opinion) still there was a period of presumptive competency in *Hezekiah Griswold*, from *June*, 1796, to *January*, 1798, after he was disseised ; and consequently, if he was under a disability before, the statute was, during this period, in full operation. It began to run, and no subsequent disability, either of *Hezekiah Griswold*, or his heirs, would protect the title. The *same* disability, which existed when his right of entry first accrued, had been removed ;—and no supervenient disability would protect the estate, or prevent the statute from continuing to run. If he was in truth insane, during this interval, as contended for by the plaintiff, that fact should have been submitted to the jury, and found by them to have been true, in order to give the plaintiff the benefit of continued and successive disabilities in *Hezekiah Griswold* and his heirs, from the disseisin to the death of *Mercy Weller*.

This ground would be sufficient for a new trial.

But, as it may turn out, that *Hezekiah Griswold* was *non compos*, during the whole period, from the disseisin till his death, it will not be deemed irrelevant to inquire, whether this would make any difference in the result. Let it, then, be assumed, that *Hezekiah Griswold* was disseised in 1793 ; that he was then *non compos mentis*, and so continued till his death in 1802 ; that *Mercy Weller*, on whom the descent was cast, was also *non compos mentis*, and so continued until her death in 1817 ; and that this action was brought, by *Elijah Griswold*, her heir, within five years after her death ; the plaintiff is still barred of a recovery. To raise this question we must assume the fact,

that *Hezekiah Griswold* was disseised in 1792; and that the possession of the defendant and others, since that time, has been adverse to the title of *Hezekiah Griswold* and his heirs; for if the possession has not been adverse, but held under *Hezekiah Griswold*, without any claim or title in the occupants, no possession, however long, will acquire a title.

It has been urged, that the disability of *Hezekiah Griswold* and his heir was *one continued disability*; that the circumstance of *Hezekiah Griswold's* death makes no difference; but the case stands on the same ground as if *Hezekiah Griswold* had lived until 1817, when his heir would have an undoubted right of entry for five years; that the case does not compare with one where there occur two different disabilities in the same person, which cannot be tacked; but that this is the farthest to which any adjudged case has extended; that the statute was intended to punish the negligent owner, by a forfeiture of his title, and it would be an extremely harsh construction to apply the statute in a case, where, during the whole time of the disseisin, the true owners had never been competent, for a single moment, to assert their title.

In reply to this reasoning, let it be remarked, that the question depends on the *true meaning* of the statute; and the best mode of ascertaining that meaning, is, to examine the language made use of, and derive the meaning from the language, instead of arbitrarily fixing that meaning, in the first place, and then endeavouring so to *construe* the language as to make it conform to the standard previously set up. It is unfortunate that certain phraseology, in frequent use on this subject, was ever adopted; such as, " that the statute never operates, where there has been no *laches*," that " it never runs against persons who are under a disability;" &c. &c. This language, without conveying any definite ideas, had nearly frittered away a most useful statute, until Judge *Smith*, in the case of *Bush* v. *Bradley*, 4 *Day* 298. instead of adopting this legal jargon, recalled our attention to the language of the act, and endeavoured to ascertain its meaning, not by attributing certain motives to the legislature, and then twisting the language so as to make it conform, but by learning the meaning and intention of the legislature from the language made use of; which is the only safe mode of determining what the legislature intended. The accuracy of this language is also denied by Judge *Swift*, in the case of *Bunce* & al.

v. *Wolcott*, 2 *Conn. Rep.* 27. " Nor," says he " is the proposition correct, that the statute never begins to run, against a person under a disability. Suppose that the party claiming is an infant, when the title accrues; if fifteen years run during his infancy, he has but five years, after he comes of full age, to make his entry. This clearly shews, that the statute operates against him during the disability. Indeed, the statute always begins to run against a man, the moment he is disseised, whether he is under a disability, or not."

We may now take it for granted, in conformity to the language of the statute, and the unanimous opinion of the court of errors, in the case of *Bunce* & al. v. *Wolcott*, that the statute began to run, the moment *Hezekiah Griswold* was disseised, whether under disability, or not ; and more than fifteen years having elapsed since that disseisin, the rights of his heirs are lost, unless those rights are saved by the proviso: for it is too clear to admit of argument, that, had the statute contained *no proviso*, the interest of all persons, whether under disability, or not, would be destroyed, by an adverse possession of fifteen years.

Does the proviso, then, save the right of the present plaintiff, and permit him to assert it, at any time, within five years, not from the death of *Hezekiah Griswold*, to whom the right of entry first accrued, but from the death of *Mercy Weller?* If the present plaintiff can enter within five years, after *her* death, if *he* should be under a disability during his life, *his heirs* will have the same right to enter within five years from *his* death ; and so different successive disabilities might be extended to an indefinite period. Such was not the intention of the legislature. The saving of the statute relates solely to disabilities existing at the time when the right of entry first accrued. *Bush* & al. v. *Bradley*, 4 *Day* 298. *Bunce* & al. v. *Wolcott*, 2 *Conn. Rep.* 27. *Stowel* v. Lord *Zouch*, 1 *Plowd.* 353. *Doe* d. *George* & al. v. *Jesson*, 6 *East* 80. *Eager* & ux. v. *The Commonwealth*, 4 *Mass. Rep.* 182. It does not provide a remedy for subsequent disabilities, even in the person to whom the right of entry does first accrue. For if an infant of the age of six years is disseised, and before arriving at full age, marries, and continues under coverture, without asserting her title, more than five years after she attains to full age, her title is barred ; and if, instead of marrying, she had been visited with insanity, before she arrived at full age, and continued in-

Hartford,
June,
1820.

Griswold
v.
Butler.

sane, during the whole five years after, her title would be also lost; for we have seen, that whether a supervenient disability be voluntary or involuntary, makes no difference; and the reason is, that no disability is provided for, or saved, except *the same disability*, which existed when the right of entry *first* accrued.   And an entry must be made within five years after *that* disability ceases to exist, whether any other disability has been superadded or not, provided more than fifteen years have elapsed from the time of the disseisin.

The saving of the statute, therefore, relates to the disability of *Hezekiah Griswold*, to whom the right of entry first accrued.   Had his disability been removed, during his life, and he become of sound mind, he must have entered within five years, to protect himself from the operation of the statute.

Must not his heirs enter within five years from his death, in the same manner, that he must have entered within five years after the removal of his disability ? And this, whether the heirs are under disability, or not ?

The fourth section of the statute in question, after providing a saving for the disabilities existing when the title accrues, proceeds to *annex* a *limitation* to the rights saved, and to prescribe the time *within which*, and *by whom*, those rights shall be exercised.   " So as such person or persons, or his or their heirs, shall, within five years next after his or their full age, discoverture, or coming of sound mind, enlargement out of prison, or coming into this country of *New-England*, or territory of *New-York*, or death, take benefit of, and sue forth the same, and at no time after the said five years :" That is to say, " take benefit" of an entry, or " sue forth" an action to recover the land.

This language is susceptible of one construction, and one only, when taken in connexion with the other parts of the statute.   It is this : that such person or persons, who were owners of the land, at the time the right of entry first accrued, or at the time of the disseisin, if then labouring under the disability of *infancy*, should have five years, after he or they became of full age ; if under coverture, should have five years from the time they became discovert ; if beyond seas, should have five years after their return ; and if *non compos mentis*, should have five years after they became of sound mind : but as these disabilities might *never* be removed, but continue until *death ;* that the *heirs* of such disabled persons,

31

Griswold
v.
Butler.

who died under the same disability which existed when their title accrued, should also have five years from the death of the disabled ancestor, to make their entry, or bring their action to recover the land. There is no saving for any disability in the *heirs* of the person to whom the right of entry first accrues, any more, than for supervenient disabilities in the same person ; but the clause in question constitutes as absolute a bar to the heirs of a disabled person, who do not enter within five years after his death, as fifteen years adverse possession would be to every person, whether under disability or not, had the statute contained no proviso. It is true, that upon this construction of the statute, the person first disseised may labour under a disability, and die leaving heirs under similar disabilities ; and a good title be lost, without *laches* in the owners. So, if an infant is disseised, and marries under twenty-one years of age, and continues under coverture more than five years, after attaining her full age, without asserting her rights, her title is lost, and that without *laches ;* but if marrying under twenty-one, is to be accounted her own folly (though her minority must protect her from this imputation) if at the age of twenty she becomes *non compos*, and does not bring her action, or make her entry, within five years after she is of full age, she is also barred ; and that without any imputation of *laches* or folly. Where, then, is the distinction between the hardship of the present case, and that which existed in the case of *Bunce* v. *Wolcott*, and many other cases ? The necessity of protecting long and peaceable possession of land is much more urgent, than any considerations resulting from the pretended hardship of the rule : and if this rule is not adopted, but the saving of the statute, instead of being confined to disabilities existing at the time of the disseisin, is to be extended to successive disabilities in the heirs of the person first disseised, there is no telling to how long a period they may extend, or how much evil such a construction would entail on the community. Every reason, which can be urged against admitting supervenient disabilities in the same person, to protect his title, equally applies to the present case ; for although some supervenient disabilities may be voluntary, and others not so ; yet, as I have already remarked, the distinction between them is exploded.

There is no substantial difference between the case of *Bunce* v. *Wolcott*, before cited, and the present. In that case,

the court decided, that the saving of the statute applied only to such disabilities as existed at the time when the right of entry first accrued; which, they said, was at the time when the owner was first disseised, and not to any supervenient disabilities; and although a disability in the heir of a person disabled, is not properly a supervenient disability, yet it falls within the same reason; and what is more conclusive, the statute declares, that if the person first disseised is under a disability, and dies before it is removed, his heirs shall have five years from his death to make their entry; and if they suffer this time to pass, they are barred, whether under a disability or not.

The case of *Doe* d. *George* & ux. v. *Jesson,* 6 *East* 80. is a direct authority in favour of the present opinion. *Thomas Jesson* died in the year 1777, leaving a son, *John,* and daughter *Francis;* the former *ten,* and the latter *six* years old. On the death of *Thomas Jesson, John,* the son, was disseised, by his uncle, *David Jesson,* who transmitted the possession to his grandson, the present defendant. *John Jesson,* the son, who who was disseised, went to sea, and died, as found by the jury, about the year 1786, or 1787, ten years after he had been disseised, under the age of twenty-one years; leaving his sister *Frances,* then also a minor about sixteen years old. In 1804, the ejectment was brought, by *Frances,* and her husband *George,* to recover the estate, which had descended to her brother; and the question was, whether she was barred, by the statute 21 *Jac.* 1. *c.* 16., similar to the one under consideration; and the court, without hearing an argument for the defendant, decided, that although *John* was under a disability, at the time of his disseisin, and died under that disability, leaving his sister *Frances* likewise under a disability, nevertheless, *Frances* had only ten years after the death of *John* to make her entry upon the land: (ten years being allowed by the *English* statute, instead of five years allowed by ours,) and consequently, that her title was barred. *Lawrence,* J. in giving his opinion, remarks, that "the statute gives to the party, to whom a right of entry accrues, and who is under a disability, at the time, ten years after the disability is removed, notwithstanding more than twenty years have elapsed since the title *first* accrued: and to his heir the statute gives *ten years* after the death of such party dying under the disability; and that in that case, more than ten years had elapsed

*Hartford,*
*June,*
*1820.*

Griswold
*v.*
Butler.

after the death of the brother, before the ejectment was brought." The disability of *Frances,* at the death of her brother, when her right accrued, created no distinction in her favour, but she was bound, in all events, to enter within ten years from her brother's death.

Nothing is to be found in the *English* books opposed to this construction, except some *obiter dicta* in the case of *Cotterel* v. *Dutton,* 4 *Taun.* 826. The remarks made were clearly unnecessary in the decision of the case ; and if they were intended to be understood in the sense which the reporter has ascribed to them, tend to shake the authority of the case to which I have just alluded ; a result, it would seem, which was foreign to their intention ; as the case of *Doe* d. *George* & al. v. *Jesson* was cited in the argument, without a syllable of disapprobation from the court.

To apply the language of the statute to the facts in this case, it declares, that if *Hezekiah Griswold* was *non compos mentis,* at the time his right of entry first accrued to him, by the disseisin of *Abner Weller,* in 1793, he, *Hezekiah Griswold,* and his heirs, should have five years to make an entry, or sue forth an action, after he became of *sound mind,* notwithstanding fifteen years had elapsed from the time of the disseisin ; but if *Hezekiah Griswold* never did become of *sound mind,* but *died non compos mentis,* then his heirs should have *five* years after his *death,* to make their entry, or bring their action ; and the statute having provided no saving for the heirs being under disabilities, the court cannot, without adding to the provisions of the statute, create this saving for them.

It may be urged, that by this construction of the law, no more than fifteen years are allowed to *Hezekiah Griswold* and his heirs, though both continued under disabilities for the whole time ; whereas it is the intention of the law, to allow, in all cases, five years, *in addition* to the fifteen years limited by the statute. To this objection, it may be replied, that the statute does not declare, that *five years* shall be allowed in cases of disability, *in addition* to the fifteen limited by the statute, but it declares, that when a person is disseised, being under a disability, *he* shall be allowed five years after his disability is removed, "notwithstanding" the fifteen years have elapsed from the time when his right first accrued. No bar is created, or can be, under *any* circumstances, in less than *fifteen* years ; but nothing is found in the statute, repugnant to

the idea, that in certain cases, the five years provided for the disabled person after the removal of his disability, or the five years provided for the heirs of a disabled person after his death, may be a *part* of the fifteen years, which constitute a bar of the true owner. The expression " notwithstanding" the lapse of fifteen years, seems only to imply, that whether the fifteen years have elapsed or not, shall create no difference ; and that the *five* years, of course, may be either *in addition* to the fifteen years, or constitute *a part* of the fifteen years, according to the circumstances of the case. If an infant, disseised, at the age of eleven years, should suffer his title to slumber for more than five years, after he was of full age, until he was twenty-six years old, he would be barred, because he had been allowed all the time which the statute allows after the removal of his disability ; but still, in this case, to constitute the fifteen years of adverse possession, the ten years which elapsed before he became of age, and the five years *after*, must both be united. Nothing is to be found in the statute, which supports the idea, that the five years provided by the saving of the statute, shall be *in addition* to the fifteen years limited. In the case of *Doe* v. *Jesson*, just cited, *Thomas Jesson*, the infant, was disseised for ten years, being all that time under a disability, and but ten years more were allowed to his sister *Frances*, though under disability, to make her entry after the death of her brother. Of course, the ten years, provided by the statute, for the heir to make an entry, after the death of a disabled person, need not be *in addition* to the twenty. The *five years* will, in most cases, be in addition to the fifteen, and may be in addition to a much longer period ; as if an infant, who was also *non compos mentis*, should live seventy years after he was disseised, and then die, his heir would have five years more to make his entry, or sue for the recovery of the land ; but if that heir, instead of having five years to disturb a title, which had been peaceably enjoyed for seventy years, might, if under a disability, have another whole life of seventy years, and his heirs the same, instead of being a statute of repose, it would produce infinite contention and injustice.

The deed from *Hezekiah Griswold*, with the consent of his conservator, but without the authority of the county court, was admitted for an unlawful purpose ; *viz.* to shew that the possession of *Abner Weller*, the grantee, was not adverse. In the case of *Trowbridge* v. *Royce*, 1 *Root* 50. the plaintiff's

*Hartford,*
*June,*
*1820.*

*Griswold*
*v.*
*Butler.*

ancestor, more than fifteen years from the date of the writ, gave the defendant licence to enter on the premises, and build a shop, and to use and improve it as his own, without limitation of time, and without reserving any rent ; and the defendant was held to have acquired a title under the statute.    In the case of *Lane* v. *Coply,* 1 *Root* 68. where a son entered upon land, with liberty from his father ; cleared up the land, and occupied it thirty years ; the father was held divested of his title : and in *Smith* v. *Isaacs,* 1 *Root* 151. the same principle is again recognized.    The court, in these cases, must have proceeded on the principle, that although the defendants entered under a parol agreement, which might operate as a licence, and prevent their being trespassers, yet that the defendants had held possession of the land, without recognizing the title of the plaintiffs, as *a subsisting one ;* and that such a possession was adverse.    The same principles were again recognized, by the supreme court of errors, in the case of *Bryan* v. *Atwater,* 5 *Day* 181. where the defendant entered into possession under a purchase from the guardian, upon receiving the guardian's bond that the plaintiff, then a minor, should execute a deed, when he arrived at full age.    The plaintiff refused to comply with the contract of his guardian, and brought ejectment for the land.    It was held, by the whole *court,* that he could not recover, and that the possession, under such circumstances, was adverse ; and they again recognized the principle, that where a man held land as a purchaser, although his title was defective, still his possession was adverse ; and, if continued fifteen years, would acquire a title.    Any possession of land, which is accompanied by the recognition of a superior title still existing, would not be adverse to that title. But where a person takes possession under a parol agreement for a purchase, and pays for the land ; or purchases it, and takes a deed, which is defective ; or, as in the present case, purchases the land of the true owner, with the consent of the conservator, and takes a deed, which is inoperative, because the conservator had not obtained an order to sell, the possession of the purchaser, which ensues, is *prima facie* under a claim of title in himself ; and is, therefore, adverse.    The deed did not conduce to prove the fact, for which it was admitted by the court.

Besides, the deed in this case was void, without the authority of the county court ; and it is not perceived how a void

deed can have the effect of giving a licence to the grantee to enter, or of creating the relation of landlord and tenant between the parties to that deed.

I would advise that a new trial be granted.

CHAPMAN and BRAINARD, Js. were of the same opinion.

New trial to be granted.