## JUNE TERM, 1845. 253

Doe ex dem. Caldwell and Wife, et al. v. Thorp, et al.

in favor of the wrong usee, and for an incorrect amount, on plaintiff's application, leave is given to make a correct entry of the judgment, *nunc pro tunc.* Here follows the entry of judgment for $54 91.

The assignments of error are, the amendment of the judgment and the rendition of judgment against Dobson, who did not join in the *certiorari.*

S. F. Rice and T. D. Clarke, for plaintiff.

---

## DOE EX DEM. CALDWELL AND WIFE, ET AL. v. THORP, ET AL.

1. The *proviso* to the 7th section of the act of 1802, limiting the "right or title of entry upon any lands," &c. which declares, " that the time during which the person who hath, or shall have such right or title of entry, shall have been under the age of twenty-one years, *feme covert,* or insane, shall not be taken or computed as part of the same limited period of twenty years;" does not except from the operation of the statute, a disability occurring after the statute has begun to run. It applies to a disability existing at the time the right accrued, and if that disability be once remov-

254 ALABAMA.

Doe ex dem. Caldwell and Wife, et al. v. Thorp, et al.

ed, the time must continue to run, notwithstanding any subsequent disability, either voluntary or involuntary.

Writ of Error to the Circuit Court of Mobile.

THIS was an action of ejectment, at the suit of the plaintiffs, for the "recovery of one lot, or parcel of land, being number nine, of square number one, of lots and lands sold by James Innerarity, to William H. Robertson, lying, &c. The defendants were let in to defend, upon entering into the usual consent rule; a verdict was returned for the defendant, and judgment was rendered accordingly.

On the trial, the plaintiff excepted to the ruling of the Court. The bill of exceptions recites, that the plaintiff proved title in Sebastian Shade, their ancestor, in the year 1818; that Shade died in 1820, leaving as his only heirs, Caroline and Matilda, who were then minors, and since intermarried, with two of their co-plaintiffs.

The defendant proved an adverse possession, under color of title, commencing in 1818, and continuing to the beginning of the year 1843.

The Court charged the jury, that if the statute of limitations commenced running in the life-time of the ancestor, the period of the minority of his daughters, Caroline and Matilda, " was not to be taken and computed as part of the time limited by the statute for commencing the action."

The plaintiff prayed the Court to charge the jury, that the statute allowed thirty years after the accrual of the right, or title, or cause of action, to bring the action of ejectment; which charge the Court refused to give, and charged the jury, that the time limited by the statute for bringing the action of ejectment is twenty years, when defendant holds under color of title.

J. A. CAMPBELL, for the plaintiff in error. The statute of limitations was suspended during the minority of the daughters of Sebastian Shade. The proviso of the statute applicable to the case, is unlike any thing found in the 4th Henry the 7th upon fines, which was discussed in Stowell v. Zouch, Plow. Rep. 353, and bears no resemblance to any clause in the statute of *James*, which has been introduced into the legislatisn of most of the States.

[Sugd. on Ven. 460.]    The only decisions which are in point, are those of Kentucky, 4 Bibb's Rep. 43, 446 ; 6 Monr. Rep. 59. See also, 3 Monr. Rep. 42; 3 Johns. Ch. Rep. 131.

Our statute expressly declares, that the time " during which" "the person who hath, or shall have, such right or title of entry," shall have been a minor, shall not be taken as part of the twenty years.    These terms cannot be satisfied without allowing each party who comes in by descent, to deduct the period of his infancy from the operation of the act.    Arguments drawn from policy, cannot be allowed to exert any influence, when the language employed in the statute is plain, and unambiguous.    The question of policy is referable to the legislative, and it must be intended, has been passed on by that department of the government, and the public inconvenience was not supposed sufficient to outweigh the injustice of concluding infants, by an act of limitations. The *provisos* to the different sections of the statute, sanction this argument.    Why should the Legislature have employed a variety of language to express the same idea ?    Why should the statutes of other States have been so closely copied in all particulars, save in this, if the Legislature had not intended to depart from the policy of these statutes, in respect to the preservation of the rights of those who labored, or might labor under disabilities.    He also cited the opinion of the minority of the judges in Stowell v. Zouch, *supra.*

E. S. DARGAN, for the defendant.    When the statute of limitations once begins to run, it does not stop, nor is it suspended in its course by any subsequent intervening disability.    [Adams on Eject. 59; 15 Johns. Rep. 169; 18 Johns. Rep, 45.]    It is what it has been frequently called, a statute of repose.    [5 Pet. Rep. 470.]

All statutes of limitations makes provision in favor of persons laboring under disabilities ; but if the statute begins to run, it is not impeded by any disability occurring subsequently.    Our statute contains a proviso in favor of infants, &c. but differs from the English statute in this, instead of allowing ten years after the removal of the disability, it deducts the time of its continuance, making the statute to begin to run, after the disability is removed, and requiring twenty years to elapse before the bar is complete.    If the exceptions in the English statute will not suspend

its operation after it has once commenced, such an effect cannot be accorded to the *proviso* in our statute.

There are two statutes of limitation in Kentucky, the one contains a provision by which it is suspended in certain cases by express words; the other employs different terms. This being the case, it is fairly inferable that the Legislature intended the latter act should be subject to the known rule of construction; and that to avoid this rule in respect to the former, language of unambiguous import was used.

COLLIER, C. J.—The statute of Fines, 4 Hen. 7 ch. 24, as well as the statute of limitations, 21 Jac. 1, ch. 16, contain a saving clause with respect to those who labor under disabilities. See Blanshard on the Sta. of Lim. 8, 114. By the former, it is provided, that an ejectment may be brought within five years after fine levied, with proclamation, if the right of entry had then accrued; unless the party entitled, labor under some one of the disabilities stated in the act; in that case, five years are allowed after the disabilities cease. The latter enactment provides, that the person having a right of entry upon lands, must pursue his remedy within twenty years after the right accrues, unless he comes within the saving clause in respect to infants, &c. See Id. 8, 18; 15 Viner's Ab. 101 to 105.

It is said to be a settled rule, and applies, without exception, to all the statutes of limitation, that when the statute has once begun to run, it will continue to run, notwithstanding any subsequent disability. As if a fine be levied with proclamation, and A has a present, or future right of entry, and becomes free from disabilities, after a lawful title has once vested in him, to enter or claim the possession, the fine will continue to run against him, his heirs, &c., notwithstanding he may afterwards become disabled, and notwithstanding he die, leaving heirs, &c., who are infants, or laboring under some disability. But if the right first accrue to a person who is at that time under a disability, the fine shall not begin to run against him, until he is free from disability; and successive disabilities, it is said, are a protection against being barred by the statute; but any cessation of disability, it is held, will call the statute into operation, and no cause subsequently accruing will arrest its action. [Blanshard on the Sta. of Lim. 19.]

Wilkinson in his treatise upon the statute, remarks, that the 21 Jac. 1, was passed to fix a shorter definite period than the common law presumption, from length of time allowed as a bar to a recovery; and though since the statute, judges seem always to have favored the right of the plaintiff, where the debt appeared to have been justly due, yet in an early case on the statute of *fines*, followed by others on the other statutes of limitations, it has been uniformly held, that where any of the statutes of limitation had once began to run, no subsequent disability would prevent its running. There is no calculation, says he, how far the time might be extended, if several disabilities had been allowed. This rule has been applied to different statutes of limitation, though they are in very different terms, yet as observed by Lord *Tenterden*, the several statutes of limitation being *in pari materia*, ought to receive a uniform construction, notwithstanding any slight variation of phrase, for their object and intention is the same. See Wilk. on Sta. of Lim. 51; Stowell v. Lord Zouch, Plowd. Rep. 374; Doe ex dem. Duroure v. Jones, 4 D. & East's Rep. 311; Doe ex dem. Griggs and another v. Shane, 4 D. & East's Rep. 306-7; Doe v. Jesson, 6 East's Rep. 80; Cotterell v. Dutton, 4 Taunt. Rep. 826; Murray v. E. I. Company, 5 Barnw. & A. Rep. 215; 1 Lomax's Dig. 627 to 630.

In Thompson, et al. v. Smith, 7 Sergt. & R. Rep. 209, it appears that the Pennsylvania statute in respect to lands, was twenty-one years, with a *proviso*, that persons within the age of twenty-one years, &c. may, notwithstanding the expiration of the time prescribed, bring their actions within ten years after the removal of the disability. Chief Justice Tilghman said, "that the limitation of actions for the recovery of real property, is essential to the peace of society, and therefore the construction of statutes on that subject, ought not to be extended by equity, so as to contravene the main object of the Legislature, by keeping up the uncertainty of title, for a great and indefinite length of time." Again, "The ten years are to be counted from the time of the ceasing or removing of the disability, *which existed when the title first accrued*. If other disabilities, *accruing afterwards*, were to be regarded; the right of action might be saved for centuries. The descent of the title upon infant females, and the marriage of those females, under the age of twenty-one, might succeed each other *ad infinitum*." Such a construction would militate "with the

main object of the law, and is not agreeable to its words. It is contrary also to the current, as well as the spirit of the authorities." See also, Eaton v. Sandford, 2 Day's Rep. 523; Peck v. Randall, 1 Johns, Rep. 165; Read v. Markle, 3 Id. 523; Sugden on Vend. 461 to 464, ed of 1836; Den v. Mulford, 1 Hayw. Rep. 311; Dow v. Warren, 6 Mass. Rep. 328; Eager v. Munroe, 4 id. 182; Griswold v. Butler, 3 Conn. Rep. 227; Demarest v. Wyncoop, 3 Johns. Ch. Rep. 129; Walden v. Gratz's heirs, 1 Wheat. Rep. 292-6; Hudson v. Hudson, 6 Munf. Rep. 352; Faysoux v. Prayther, 1 Nott & McC. Rep. 296; Jackson v. Wheat. 18 Johns. Rep. 40.

It is insisted by the plaintiff in error, that although the construction placed upon the statutes of limitation in England, and some of the States, to be such as has been shown, yet the phraseology employed in our enactments will not admit of a similar interpretation. The seventh section of the act of 1802, enacts, that "no person who hath, or hereafter may have, any right or title of entry, upon any lands, tenements, or hereditaments, shall make an entry therein, but within twenty years, next after such right or title shall have accrued, and such person shall be barred from any entry afterwards: *Provided, always,* That the time during which the person who hath, or shall have, such right or title of entry, shall have been under the age of twenty-one years, *feme covert,* or insane, shall not be taken or computed as part of the same limited period of twenty years." [Clay's Digest, 327, § 83.]

By the 1st section of the act of 1843, it is enacted, that where lands are sold under the decree of a Court of Chancery, to satisfy a mortgage, or other incumbrance, all rights of a person not a party to the decree, who shall claim under the mortgagor, &c. shall be forever barred, unless the suit for redemption be commenced within five years from the execution of the decree. The second section is as follows : " All actions for recovery of lands, tenements, and hereditaments, in this State, shall be brought within ten years after the accrual of the cause of action, and not after : *Provided,* That five years be allowed, under both sections of this act, for infants, *femes covert,* insane persons and lunatics, after the termination of their disabilities." [Clay's Dig. 329, § 93.]

The *proviso* to the limitation of act of 21 Jac. 1, so far as it relates to actions for the recovery of real estate, provides, "that if

any person," " that hath, or shall have such right or title of entry," "be at the time of the said right or title, first descended, accrued, come, or fallen, within the age of twenty-one years," &c. " that then such person," &c. shall, notwithstanding the expiration of twenty years, bring action, &c.: so as such person, &c. shall, within ten years next after his full age, &c. sue for the same, and at no time after the said ten years. There is also a saving clause to the sections of the statute, in respect to personal actions ; it provides, that if the person entitled, " be at the time of any such cause of action given, or accrued, fallen, or come within the age of twenty-one years," &c. that then, such person may bring the same action, within such time "as other persons having no such impediment, should have done."

In Kentucky, there is a statute, limiting the time of entry into lands, which provides, that if any person entitled, shall be " under the age of twenty-one years," &c. " at the time such right or title accrued, or coming to them; every such person, and his or her heirs, shall and may, notwithstanding the said twenty years are, or shall be expired, bring or maintain his action, or make his entries within ten years next after such disabilities removed, or death of the person so disabled, and not afterwards." In respect to this statute it has been decided, that if it begins to run against the ancestor, but by his death the land descends to his heirs, who are infants; the statute does not run on, but the infants shall have the time allowed by the statute, after arriving at full age, to bring their action. There is a difference, say the Court of Appeals of Kentucky, in the language of the English statute and our own on this subject. The English statute saves the right of infants, &c. who were such "at the time when the said right, or title, *first* descended, accrued, or fallen." From the expressions used in the saving clause, it obviously relates to the time when the right *first* accrued, and the Courts of England have, therefore, properly extended it only to the persons to whom the right then accrued, and not to those to whom it should afterwards come : so that on the death of a person in whose life the statute first began to run, his heir must enter within the residue of the period allowed for making the entry, although he labored under a disability at the death of his ancestor. But the saving in the Kentucky statute evidently relates to the time when the right accrues, or comes to those laboring under the disabilities therein mentioned ; not to

the time when the right *first* accrued to those under whom they derive their right. [Machin v. May, et al. 4 Bibb's Rep. 44; Sentney, et al. v. Overton, 4 Bibb's Rep. 446 ; McIntire's Heirs v. Funk's Heirs, 5 Litt. Rep. 33; South's Heirs v. Thomas' Heirs, 7 Monroe's Rep. 61.]

In Beauchamp v. Mudd, 2 Bibb's Rep. 538, the Court adopted the English construction of the 21 Jac. 1, in regard to personal actions, because, as it was said, " the saving, or proviso" in such cases, was expressed in language different from that used where suits for the realty are limited as to time.

The only case that has come under our notice, which seems to maintain, that a succession of disabilities can be united, so as to prevent the bar of the statute, is, Eaton v. Sandford, 2 Day's Rep. 523. That case was greatly weakened as an authority, by what was said in Bush and wife, et al. v. Bradley, 4 Day's Rep. 298, and was overruled in Bunce v. Wolcott, 2 Conn. Rep. 27. True, the saving in the Connecticut statute confines the disability to the person entitled " at the time of the said right or title, first descended, accrued," &c. in the very terms of the 21 Jac. 1, but no particular stress seems to have been laid upon the word " first." In the last case cited, the proviso of the statute, it was said, "regards solely and exclusively the disabilities existing at the time of the right, or title, first accrued ;" and thus to construe it, was in accordance with its terms, with private justice and public convenience. It allows sufficient scope for the operation of the act, while "it avoids the intolerable inconvenience of accumulated successive disabilities, which, for an interminable period, might subvert titles apparently well established, and produce the most ruinous instability. And what is of no small importance, is in harmony with the decisions of other States."

In Walden v. The Heirs of Gratz, 1 Wheat. Rep. 292, 297, it was contended that the statute of limitations of Kentucky, to which we have referred, will stop, although it had begun to run, if the title . passes to a person under any legal disability, and recommences after such disability shall be removed. This construction, say the Court, " is not justified by the words of the statute. Its language does not vary essentially from the language of the statute of James, the construction of which has been well settled ; and it is to be construed as that statute, and all other acts of limitation founded on it have been construed."

Doe ex dem. Caldwell and Wife, et al. v. Thorp, et al.

We have been thus particular in noticing the act of limitations of Kentucky, and the decisions in respect to it, as it was insisted, at the argument, that it was materially variant from the statute of 21 James, 1. With all deference, we must say, that in contrasting these enactments, the Court of Appeals of Kentucky have given to unessential variation in language, a potency which it cannot claim, upon any just rules of interpretation; and that what was said in the case cited from the first of *Wheaton*, is entirely consonant to our view of the statutes, if it were necessary to express an opinion.

The case at bar does not come within the act of 1843; for if it be competent for the Legislature to prescribe a limitation, to bar pending suits, they have expressly disavowed any such intention by providing, "that no suit shall be barred by the operation of this act within five years from its passage." Here the action was commenced previous to 1843, and the case must be considered in reference to the statute of 1802. The saving within which it is attempted to bring the plaintiff, is expressed in terms somewhat different from that contained in the English statute—it is not so verbose; yet it is apprehended, that in respect to the question before us, it must receive the same construction. True it does not *in totidem verbis*, limit the disability to the person who hath the "right or title of entry, or shall be, at the time of the said right or title first descended, accrued, come or fallen, within the age of twenty-one years," &c.; but it declares, "that the time during which the person, who hath, or shall have, such right or title of entry, shall have been under the age of twenty-one," &c. "shall not be taken or computed," &c. It is clear that the person here referred to, is him against whom the statute begins to run; as to persons coming in subsequently, there is no exception in their favor. The saving expends itself upon the person first entitled to an action, if he is in the predicament to require the benefit of it; and if the "disability be once removed, the time must continue to run, notwithstanding any subsequent disability, either voluntary or involuntary." Ashurst, J. in Doe ex dem. Count Duroure v. Jones, 4 T. Rep. 300. This conclusion is in perfect harmony with the decisions in England, and the several States, with the solitary exception that has been noted; besides it is promotive of the policy of the statute, and makes it what all statutes of limitation are intended to be, "statutes of repose." Its tendency is

to quiet titles, by prescribing a limit to litigation, instead of deferring it to an uncertain, or unreasonable time in the future.

No objection was taken at the argument, or in the assignment of errors, to the refusal of the Circuit Judge, to charge the jury as prayed by the plaintiff's counsel; we will not therefore consider the question of law arising upon it. From what has been said upon the first point, it follows that the judgment must be affirmed.