Scott, J.
To the action of the plaintiff in the court of common pleas, the defendant below, who is also defendant in error, answered, setting up, among other things, the statute of limitations, as a bar to the action. In regard to the limitation of twenty-one years, pleaded by defendant, the act governing the case was that of February 18, 1831. Chase’s Statutes, 1768.
It provides, in section 1, among other things, that “ the action of ejectment, or any other action for the recovery of the title or possession of lands, tenements, or hereditaments, shall be commenced within twenty-one years after the cause of action shall have accrued, and not after.” Provided (in section 2), “ That if any person entitled to have or maintain any action of ejectment for the recovery of the title or possession of any lands, tenements, or hereditaments, be, at the time his right or title first descended or accrued, within the age of twenty-one years, feme covert, insane, or imprisoned, every such person may (after the expiration of twenty-one years from the time his right or title first descended or accrued) bring such action within ten years after such disability was removed, and at no time thereafter.”
*495 This does not differ, in substance, from the law as it now stands under the code.
From the pleadings in the case, and the findings of the court of common pleas, it appears that the plaintiff's cause of action accrued in 1838, or, at farthest, in 1842. She was then a minor, and continued to be such until 1848. In 1847, being only seventeen years old, she was married, and has ever since been, and still is, under coverture. Her action was brought in August, 1865, when the twenty-one years, to which her right of action was limited by the first section of the act, had fully expired. If the ten years given by the second section of the act to persons under disability, began to run when she became of full age, i.n 1848, then the bar of the statute was complete before suit brought. But if the disability of coverture, occurring after the cause of action accrued, and before the disability of infancy had been removed, continued to her the protection of the second section, so that the ten years given by it do not begin to run during her coverture, then she might well bring her action, for she is still under coverture.
The question thus presented depends on the construction to be given to the second section of the act, and if determined adversely to the claim of the plaintiff, must, of course, end her case. We propose, therefore, first, to consider this question.
And, first, how stand the authorities upon this question? The precise question here made has not been passed upon by the supreme court of this state, in any reported case, so far as we are aware. But it has frequently arisen in this country, in other states, under statutes substantially similar to our own. In the case of Eager and wife v. Commonwealth, 4 Mass. 182, this very question arose. The plaintiffs there, as in this case, contended that as the wife was an infant when her right accrued, and as the disability of coverture occurred before the termination of her infancy, she was protected by the proviso (which corresponded with the secón I section of our statute of 1831); because there had been no moment of time, since her right accrued, in which she *496 had not been under disability. But the court (Ch. J. Parsons delivering the opinion) unanimously held, that “ the-disability, to be sufficient to bring the plaintiff within the proviso, must be one existing at the time the right first accrued.” The court said: “We have no power, by an equitable construction, to defeat the operation of the enacting clause. ... If we were once to admit a disability not existing when the right accrued, as 'within the-proviso, it would be difficult to decide how far we must go.” And it was held, that the court must adhere to the express words, and natural and clear import of the proviso, in favor of persons under disability.
In Sandford v. Eaton, 2 Day’s Cases, 523, a contrary construction was given to a similar proviso, by the Supreme Court of Connecticut; but the soundness of this-ruling was strongly questioned in the subsequent case of Bush v. Bradley, 4 Day, 208. In this case, however, the-court did not fiud it necessary to pass upon the question.; but in Bunce v. Wolcott, 2 Conn. 27, the same court expressly overruled the doctrine of Sandford v. Eaton, and it was held by Ch. J. Swift, and all the judges who sat in the case, that the saving clause of the statute applied only to a disability existing wheu the canse of action accrued, and not to any supervenient disability.
The question there was, as here, whether supervenient coverture could be added to infancy existing when the cause of action accrued.
The same question arose in Demarest v. Wynkoof, 3 Johns. Ch. 129, where it was sought to add the disability of coverture to that of infancy; but the able and learned Chancellor Kent said: “I am clearly of the opinion that the party can only avail himself of the disabilities existing when the right of action first accrued. . . . Cumulative disabilities can not be allowed.” In that case it was said by the chancellor: “ It would be impolitic, as well as contrary to established rule, to depart from the plain meaning and literal expression of the proviso in the statute of limitations. We can nót w.ell misapprehend the mean *497 ing of the legislature. The party bringing himself within the proviso, must be, £ at the time such right or title first descended or accrued, within the ag.e of twenty-one years, feme covert, insane, or imprisoned/ and he must bring his action within ten years lafter such disability removed.’ ” It was said, in the same case : “ General words in the statute must receive a general construction, and if there be no express exception, the court can create none.”
So, in Butler and wife v. Howe, 13 Maine, 397, it -was held that if several disabilities exist together, at the time when the right of action accrues, the statute of limitations does not begin to run until the party has survived them all. But, under the statute, a party can not avail himself of a succession of disabilities, but only of such as existed when the right of action first accrued.
And so it was held by the Supreme Court of the United States, in Mercer v. Selden, 1 Howard, 37, Justice McLean delivering the opinion of the court. The syllabus on this point is: “ Disabilities which bring a person within the exceptions of the statute, can not be piled one upon another; but a party claiming the benefit of the proviso, can only avail himself of the disability existing when the right of action first accrued.”
Many other cases might be cited, in which the statute has received a similar construction by the courts of last resort in our sister states. Among others are the cases of Dugan v. Gittings, 3 Gill (Md.), 138; Doe, ex dem. Caldwell, v. Thorp, 8 Ala. 253 ; White v. Latimer, 12 Texas, 61; Clark v. Jones, 16 B. Monroe, 121; Ashbrook v. Quarles’ Heirs, 15 B. Monroe, 20; Clay’s Heirs v. Miller, 3 Monroe, 148; Welborn v. Weaver, 17 Geo. 267; Keeton’s Heirs v. Keeton’s Adm’r, 20 Missouri, 530; Thompson v. Smith, 7 Serg. & R. 209.
In the ease last cited, the question was considered by Ch. J. Tilghman with reference both to the policy of the statute, and the words of the proviso, or exception ; which it was held could not be extended on grounds of equity.
*498 In this state, it was held, in Lessee of Whitney v. Webb et al., 10 Ohio, 513, that successive disabilities in different persons, as ancestor and heir, could not be connected, and that the heir, whether under disability or not, must bring his action within the time allowed by the proviso, after the death of the ancestor. And such, no doubt, is the settled construction of the statute. In Carey’s Adm’r v. Robinson’s Adm’r, 13 Ohio, 181, Ch. J. Lime, in delivering the opinion of the court, took occasion to say (p. 197), that a proper construction of the statute “ does not permit one disability to be connected with another, of either the same or a different kind, but it secures the right of pursuing a cause of action after the first privilege has expired, or the first disability has been exhausted.” The question in that case was different from the one we are considering here, still this expression is indicative of the opinion of that jurist on the point before us.
It is quite true that a different construction of the English statutes of limitation had obtained in that country, and is maintained by reputable English text-books. 2 Preston on Abst. of Title, sec. 339 ; Sugden on Vendors.
There is a difference between the phraseology of the American statutes of limitation in general, and the statute ■of 21 Jac. 1, and this difference is more marked in the case :of the statute of fines, of 4 Hen. 7. Whether there is such a difference in the phraseology, as would justify the apparent difference of the construction in the two countries, it is not worth while to inquire; for we think the construction almost universally given by the courts of this country best comports with the policy of the statute, which is that of repose, and with the legislative intent, as manifested by the plain and clear tenns of the proviso, or second section of the act.
The first section of the act expressly limits the time within which an action may be brought for the recovery of the possession of lands, to twenty-one years after the accruing of the cause of action. This provision, standing *499 alone, would, as against all persons, bar the right of action after twenty-one years.
But from this universality of application, the second section makes an exception, in favor only of persons who, at the time their cause or right of action first accrued, were under some one or more of the four disabilities; to wit,' infancy, coverture, insanity, and imprisonment. It is very clear that no such disability will bring any person within the operation of this section, unless it exist at the -time when the cause of action first accrues. If a party is then free from disability, the time given by the first section begins to run, and its flow will not be interrupted by a disability arising subsequently. The case will be goveimed solely by the first section.
But if any of the specified disabilities exist when the cause of action first accrues, then this second section allows the person so under disability, “ to bring such action within ten years after such disability is removed,” though the twenty-one years given by the first section shall have previously expired. And the question is, to what does the word “ such” refer, ,in the expression “ after such disability is removed ?” It was evidently intended to refer to some disability previously mentioned. But no disabilities are spoken of in the former part of the section except those which existed when the right of action-first accrued. The fair and natural construction therefore is, that the action must be commenced within ten years after the removal of the disar bility or disabilities which, by their existence at the time when the right of action first accrued, brought the case within the operation of this section.
"What persons, or cases, a wise public policy should except from the operation of the general bar of the statute, and what should be the duration of such exceptions, are questions for legislative, not judicial consideration. We can enforce no exceptions unwarranted by the plain words of the statute.
It is obvious that the section we have been considering, can have proper application only where an action is brought *500 .after the expiration of twenty-one years from the time the right of action accrued. And in such a ease, so far as this statute is concerned, the only question is : Was the plaintiff, or one under whom ho claims, at the time the right of action first accrued, under any statutory disability, which continued, without interruption, till within ten years of the time when his action was commenced? In the present case this question must, confessedly, be answered iu the negative. At the time the plaintiff’s right of action first accrued, she was under the disability of infancy only. She became of full age in 1848, and did not commence her action till 1865, when the bar of the statute was complete.
As this is fatal to the plaintiff’s case, we do not find it necessary to consider the other defenses interposed by answer in the court of common pleas.
It may be proper, however, to say, that we think the facts stated in the answer, and found hy the court to be true, were-sufficient to divest the plaintiff of all equitable interest, at least, in the premises, and of the right of possession. Thd facts in the case are briefly these: In 1838, the premises in question were regularly sold by the administrator of the estate of plaintiff’s father, who had previously died intestate. The sale had been previously ordered by a court of competent jurisdiction, in a statutory proceeding for that purpose, to which the plaintiff and all other necessary parties were duly made defendants. The property, embracing the premises in controversy, was sold for $2,400; and this sale was duly confirmed by the proper court, and a deed ordered to bo made to the purchaser on his compliance with the terms of the sale.
The administrator was thereby invested with full power, under-the statute, to convey to the purchaser, upon the payment of the purchase money, all the interest of the plaintiff iu the premises, whether legal or equitable. But the terms of sale were not fully complied with, by the purchaser, and such deed was therefore not delivered. Partial payments of purchase money, either by the purchaser or his assiguee, appear to have been made, up till 1842, amounting in the *501 aggregate to some eight or nine hundred dollars. In this state of the case, perhaps, the administrator might have rescinded the sale, by .refunding the moneys received thereon. But he chose, as he well might do, to enforce the payment of the purchase money remaining unpaid. He did so, in 1842, by a proceeding in equity, in which the purchaser and his assignee were made defendants, and in which he obtained a decree for the sale of all the equitable interest of the defendants in the premises, for the satisfaction and discharge of the residue of purchase money remaining unpaid ; which the court found amounted to some $2,000, including accruing interest till that time. To this proceeding in chancery to subject the interest of the purchaser and his assignee to sale, the plaintiff' was not a necessary party.
A sale was made, by a master in chancery, pursuant to the terms of this decree, from which $2,400 were realized. This sale was confirmed by the court, and a deed was ordered to be made and was in fact made by the master to a purchaser, under whom the defendant in this case claims title. Erom the proceeds of this sale, the original purchase money, with the interest thereon, was fully paid, and came as assets into the hands of the administrator. We think the purchaser at this judicial sale took, by virtue of the master’s conveyance, at least all the equitable rights of the parties to the suit. '
The purchase money having been fully paid, we think the purchaser at the judicial sale had a right to demand of the administrator a conveyance of all the interest and title of the heirs of his intestate in and to the premises. Whether such was the legal effect of the deed made by the master, it is unnecessary to inquire.
If a title of any kind remained in the plaintiff, it was certainly one which gave her no equitable right to recover possession of the premises; and we think she has no cause to complain of the judgment of the court of common pleas, as modified by the district court.

Judgment of district court affirmed.