# Barnett *v.* Warren & Co.

*Action for Money Had and Received.*

1. *Landlord's statutory lien and remedies* —The landlord has a lien, on the crops grown on the rented lands, which lien he may enforce against the crops or their proceeds, into whose hands soever the one or the other may pass, unless the right and title of a *bona fide* purchaser without notice have intervened.

[Barnett v. Warren & Co.]

2. *Factor's lien and rights.*—A factor, or commission-merchant, with whom cotton is stored for sale, may, "by custom of trade chrystalized into law," make advances on it, thereby acquiring a lien on the cotton or its proceeds for his reimbursement; which lien and right are subordinated only to an outstanding legal title, or to a paramount equity of which he had notice.

3. *When action lies for money had and received.*—An action for money had and received is an equitable action, and lies whenever one person has money which, *ex æquo et bono,* belongs to another; and if property, or anything else, be received as the equivalent of money, by a person who assumes to cancel or dispose of a property right, for which he is liable, legally or equitably, to account to another, the latter may treat the transaction as a receipt of money, and sue for money had and received.

4. *Same; case at bar.*—A tenant having taken the rent-contracts of his sub-tenants, payable in cotton, and deposited them, as collateral security, with a merchant who made advances to him for supplies, and who had notice of the original landlord's lien; and having deposited the cotton, as received, in the warehouse of a factor, who had notice of the merchant's lien, but not of the landlord's; and drawn a check against it, in favor of the merchant, which was paid by the factor, and charged to the general account of the tenant, before the cotton was sold; *held,* that the landlord might maintain an action for money had and received against the merchant, for the money received on the check.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Thomas M. Barnett, against J. R. Warren & Co., a mercantile firm doing business in the city of Montgomery; and was commenced on the 2d November, 1886. The complaint contained only the common counts, and the only plea was the general issue. The court charged the jury, on request in writing, "that they must find for the defendants, if they believed the evidence;" and this charge, to which the plaintiff excepted, is now assigned as error. The material facts are stated in the opinion of the court.

MARKS & MASSIE, for the appellant, cited *Stewart v. Conner,* 9 Ala. 803; *Cameron v. Clark,* 11 Ala. 259; *Strickland v. Burns,* 14 Ala. 511; *Westmoreland v. Foster,* 60 Ala. 448; *Insurance Co. v. Tunstall,* 72 Ala. 151; *King v. Martin,* 67 Ala. 177.

ROQUEMORE, WHITE & LONG, *contra.*—The plaintiff's lien on the cotton raised on his land by sub-tenants is admitted, and his right to pursue the cotton or its proceeds, in the hands of any person who had notice of his lien, is also admitted. But the money received by defendants, on the check drawn by Belser & Parker, was not the proceeds of that cotton; for it was still in the warehouse, unsold, and plaintiff might have pursued it. There is nothing in the

testimony which can be construed as an admission by defendants that the money was derived from the proceeds of the sale of the cotton, or which can estop them from denying that such is the fact. Mutuality is an essential element of an estoppel. As to the action for money had and received, see Wait's Actions & Defenses, vol. 4, pp. 469 *et seq.*

STONE, C. J.—There is no controversy about the facts in this case.

Belser & Parker, by contract, became tenants for the year 1886 to Barnett, appellant, of a plantation in Bullock county, at an agreed rent of twelve hundred dollars, to be paid in November, 1886. Belser & Parker did not personally cultivate the lands, but sub-let them to under-tenants, taking their obligations to pay the rent in cotton, aggregating thirty-five bales to be paid. These obligations to deliver, or pay in cotton, Belser & Parker deposited with J. R. Warren & Co., as collateral security for a debt contracted, or to be incurred. Warren & Co. knew what lands the cotton specified in the contract was to be grown on, knew that Belser & Parker had rented the lands from Barnett, the rent to be afterwards paid, and, up to and including the time when they received the five hundred dollars after noticed, they were informed that the rent due to Barnett had not been paid.

When the crop matured and was harvested, Belser & Parker collected the rent cotton, thirty-five bales, and placed it with Lehman, Durr & Co. The testimony shows that Lehman, Durr & Co. made sale of the cotton for Belser & Parker, but it is not stated in terms that they were cotton factors. They, Lehman, Durr & Co., had notice that J. R. Warren & Co. held the rent contracts of the sub-tenants, on account of which the thirty-five bales of cotton had been delivered, and that they claimed the proceeds, or a lien on the proceeds of the cotton. There is no proof that Lehman, Durr & Co. were notified that any rent was due to Barnett. The facts being thus, on October 5, 1886, Belser & Parker, at the request of J. R. Warren & Co., drew on Lehman, Durr & Co. as follows: "Pay to order of J. R. Warren & Co. five hundred dollars, for rents collected, for which they hold collaterals—value received, and charge the same to account of Belser & Parker." Lehman, Durr & Co. paid this draft to J. R. Warren & Co., the latter's name being indorsed on the draft; and the sum thus paid was charged to Belser & Parker's general account with Lehman, Durr & Co.

When J. R. Warren & Co. sought to obtain the draft on

Lehman, Durr & Co., copied above, they were informed by Belser, of the firm of Belser & Parker, that if it were drawn on them generally, it would not be honored; "that Lehman, Durr & Co. would not pay it, unless it was out of the cotton covered by their (defendants') said collaterals from the Barnett place; that Belser & Parker did not have any funds on deposit with Lehman, Durr & Co.," but owed them largely on account. The general manager of the house of Lehman, Durr & Co. gave testimony (and his testimony was not controverted), as follows: "That the draft in evidence was presented to Lehman, Durr & Co. by defendants, and the amount thereof was paid to them; that it was paid on account of the said thirty-five bales of cotton; . . that said draft was charged on the account of Belser & Parker, as so much money paid out of thirty-five bales of cotton raised on the Barnett place." The record states that "It was admitted by defendants that they had notice of plaintiff's lien." There was no testimony that the thirty-five bales of cotton, or any part of it, had been sold, when Lehman, Durr & Co. paid the draft to J. R. Warren & Co.

It is not controverted in this case that Barnett had a lien on the thirty-five bales of cotton, for the unpaid rent due him, and that he could enforce that lien against the cotton, or its proceeds, into whose hands soever the one or the other might pass, unless the right and title of a *bona fide* purchaser without notice had intervened.— *Westmoreland v. Foster*, 60 Ala. 448; *Hussey v. Peebles*, 53 Ala. 432; *Thompson v. Merriman*, 15 Ala. 166. The precise contention is, that inasmuch as it is not shown the cotton had been sold when J. R. Warren & Co. collected the draft from Lehman, Durr & Co., the money collected was not, and could not be, the proceeds of cotton, then unsold; and hence Warren & Co. had not received money to which Barnett was entitled.

We have stated above that the cotton was placed with Lehman, Durr & Co., and the testimony in regard to it, and in regard to other cotton so placed, was sufficient to justify its submission to the jury, on the inquiry, whether it was placed in their hands as agents or factors for its sale. We do not think, under the testimony in this record, that the Circuit Court would have been justified in declaring to the jury that there was no testimony tending to show an agency on the part of Lehman, Durr & Co. to sell cotton for others. The testimony shows they were engaged in a business, and tends to show a sale of cotton was part of that business. So, any charge would necessarily be faulty and unsound, if it pretermitted that testimony and its legal bearings.

If Lehman, Durr & Co. were cotton factors, or agents engaged in the business of selling cotton for others, then, by custom of trade, crystalized into law, the consignment of the cotton to them, or stored with them, for sale, clothed them with certain rights and liens in relation thereto. Among these were the custom and right of making advances on the consignment, thereby acquiring a lien on the cotton and its proceeds for their reimbursement. And this lien authorized them to hold the cotton and its proceeds, until their advance was repaid to them, or realized out of its proceeds. It would prevail against J. R. Warren & Co., for, to the extent of the advance, they would have anticipated and realized the proceeds of the cotton. It would prevail against Belser & Parker, because they authorized payment of the proceeds to J. R. Warren & Co. It would prevail against any one holding a mere latent equity, of which Lehman, Durr & Co. had no notice, even though that equity was prior and paramount to the claim of J. R. Warren & Co. As to this right of Lehman, Durr & Co., being a lien, coupled with the actual possession of the thing on which it rested, they were purchasers to the extent of the advance they made, which would be subordinated only to an outstanding legal title, or to a paramount equity of which they had notice.—*Brown v. McGran*, 14 Pet. 479, 494–5; 2 Add. on Contr., § 932; Colebrook on Col. Sec., § 406; Schouler on Bailm. 177; *Schiffer v. Feagin*, 51 Ala. 236; *McCombie v. Davies*, 7 East, 5; *Urquhart v. McIver*, 4 Johns. 103; *Blair v. Childs*, 10 Heisk. (Tenn.) 199; *Fourth National Bank v. Amer. Mills Co.*, 29 Fed. Rep. 611.

May we not inquire, if the money was not proceeds of the cotton, from what source, or on what consideration, did it arise? Between J. R. Warren & Co. and Lehman, Durr & Co., it was part proceeds of the cotton, and would have been so adjudged in any controversy that might have subsequently arisen between them in regard to it. So, if there had been any contention between Belser & Parker and either of the other firms, the same ruling would have been made. Is payment on a debt before it is due, any the less payment on the debt, because it is voluntarily made before it could be coerced?

A suit for money had and received is in the nature of an equitable action, and is maintainable whenever one person has money which *ex æquo et bono* belongs to another (3 Brick. Dig. 51, §§ 10, 11, 13); and it is not always necessary that actual money shall have been received. If property, or any thing else, be received as the equivalent of money, by one who assumes to cancel or dispose of a property right, for

36

[Hall v. Steele.]

which, by contract, or liability, legal or equitable, it is his duty to account to another, the latter may treat the transaction as a receipt of money, and sue for it as such. *Stewart v. Conner*, 9 Ala. 803; *Cameron v. Clark*, 8 Ala. 259; *Strickland v. Burns*, 14 Ala. 511.

The Circuit Court erred in giving the general charge in favor of defendants. On the contrary, if Lehman, Durr & Co. received the cotton for sale as factors, and if the other facts are as both parties seem to concede, the plaintiff is entitled to recover.

Reversed and remanded.