[Teat v. Chapman & Co.]

# Teat *v.* Chapman & Co.

### *Destruction of Lien.*

(Decided June 13, 1911.   Rehearing denied June 30, 1911.
56 South. 267.)

1. *Evidence; Judicial Notice; Clerks of Foreign Courts.*—The courts do not take judicial notice of clerks of foreign courts or of their powers, hence, an endorsement on a mortgage showing that it had been filed for record in the office of the clerk of the circuit court of a sister state, does not show that the mortgage was filed for record as authorized by the laws of such state.

2. *Same; Laws of Other States.*—The courts do not take judicial notice of the statutes or decisions of courts of other states, but the same must be proved.

3. *Same; Presumptions.*—In the absence of evidence of the laws of another state, it will be presumed that the common law prevails there, and that there is no law authorizing the recordation of a mortgage.

4. *Same; Necessity of Proof.*—In the absence of proof of the laws of sister states governing the recording of mortgages, mere proof that a mortgage executed in another state on property there, and subject to the laws of that state, was filed for record in the office of the circuit court clerk of the county in that state, is not proof of constructive notice to subsequent purchasers.

5. *Sales; Bona Fide Purchaser; Subsequent Purchaser.*—Where chattels have passed into the hands of a bona fide purchaser every subsequent purchaser stands in his place and is entitled to protection as a bona fide purchaser irrespective of notice.

6. *Estoppel; Sale of Property; Consent.*—Where a mortgagee authorizes the mortgagor to sell the mortgaged chattel or knew when he received the money from a third person that it was the price paid by such person for the purchase of the chattel, the mortgagee is estopped from suing such third person for the destruction of the lien created by his mortgage.

7. *Action on The Case; Remedy.*—An action on the case is an equitable action and the remedy is administered after the method employed by the law in its corresponding form of action ex contractu for money had and received.

. 8. *Limitation of Action; Defense.*—To be available as a defense the statute of limitations must be specially pleaded, otherwise, it is deemed waived.

9. *Mortgages; Chattel Mortgages; Rights of Purchasers.*—Where a mortgagee, without knowing that the mortgaged chattel had been sold, received the price representing the fair value of the property, in the absence of equitable. reasons to the contrary, he could recover

[Teat v. Chapman & Co.]

of the purchaser or the one holding under him, only nominal damages for the destruction of the lien created by the mortgage.

10. *Same; What Law Governs.*—Where the evidence showed that the mortgage was recorded in a sister state in the manner prescribed by the laws of the sister state and the mortgaged chattel was bought in such state, the validity of the purchase as to constructive notice is governed by the laws of such state.

11. *Same.*—One who buys chattels covered by a mortgage which is not recorded until three years after the purchase is not chargeable with constructive notice.

12. *Same.*—Where by the laws of a sister state a chattel mortgage executed there on property situated there created only an equitable lien in favor of the mortgagee, a purchaser of the mortgaged property, if liable at all, was liable only for the destruction of the mortgagee's lien, and not for conversion.

13. *Same.*—Under section 3386, Code 1907, one who buys property brought into this state within less than three months does so at his peril since the mortgagee has three months within which to record after the property is brought into this state.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by the C. D. Chapman & Co. against H. C. Teat for the destruction of a lien. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The evidence showed that on the 4th day of December, 1905, Lee Dunn and others executed to Chapman & Early a mortgage, embracing the mule in the controversy; that Chapman & Early dissolved in the year 1906, C. D. Chapman purchasing the interest of Early; that on January 1, 1907, A. L. Campbell became a member of the firm and acquired an interest in the firm property, including this mortgage, but the mortgage was never assigned in writing by Chapman & Early to C. D. Chapman, nor by C. D. Chapman to Chapman & Co. During all of this time, and since, the mortgagor resid: ed in the state of Florida, and the laws of the state of Florida were introduced, showing the nature of the mortgage as giving a lien only to the mortgagee and not conveying the legal title. Chapman testified that

[Teat v. Chapman & Co.]

there was a balance still due on the mortgage. It appeared undisputedly that Lee Dunn sold the mule to Dixon, and Dixon sold the mule to Davis on the 10th of October, 1906, and that Davis paid Dixon $225 for the mule; that he kept the mule continuously until August, 1909, and that he then traded the mule to some person in Hartford. Dunn testified that the proceeds which he realized from the sale of the mule to Dixon were paid to the plaintiff, and he further testified that he had permission and authority of the plaintiff to sell the mule to Dixon. He also testified that the mortgage had been paid in full by a duebill, which had been collected by plaintiff. The other facts sufficiently appear in the opinion.

W. O. MULKEY, for appellant. It becomes necessary that the plaintiff show a destruction of a lien by the defendant, and the evidence in this record does not show it.—*Ehrman v. Oates*, 101 Ala. 604; *Barnett v. Warren*, 82 Ala. 557. . Counsel discuss other matters assigned as error, but without further citation of authority.

C. D. CARMICHAEL, for appellee. No brief came to the Reporter.

DE GRAFFENRIED, J.—This suit was brought by appellees against appellant for damages for the destruction by appellant of a lien which the complaint alleges the appellees held on a mule.

The evidence, without conflict, showed that one Dunn, with others, executed the mortgage, which was introduced in evidence, in December, 1905, and that the mortgage embraced the mule, the subject of the suit; that appellees were certainly, in equity, the owners of said mortgage, and were entitled to maintain the suit

as such; that the mortgage was recorded in Geneva county, Alabama, on November 4, 1909. There was also an indorsement on the mortgage, stating that it had been filed for record in Holmes county, Fla., on December 7, 1905, and recorded in Mortgage Book S, page 450; that the mortgage was made on property situated in Holmes county, Fla., and that it was intended by the parties to be and was a mortgage governed by the laws of Florida; that there is a statute of the state of Florida providing that "a mortgage shall be held to be a specific lien on the property therein described and not a conveyance of legal title or of possession;" that in the early part of 1906 Dunn, one of the mortgagors, sold the mule in controversy to one Dixon, for value; that Dixon, in October, 1906, sold it, for value to one Davis; that Davis sold it in August, 1909, to appellant, for value, and that appellant sold it, for value, shortly afterwards, to some one residing in Hartford; and that each of the above-named purchasers took possession of the mule on the day that he bought it and used it as his own, exercising all the usual acts of ownership over it, and claiming exclusive and absolute title to it until he sold it. There was no evidence in the case tending to show that either of the above-named purchasers, at the time he purchased the mule, knew of the existence of the mortgage, or of any fact putting him on inquiry as to its existence. There is a sharp conflict in the evidence as to whether Dunn, when he sold the mule to Dixon, did so with the knowledge or consent of the mortgagees, and also as to whether or not the mortgage had been paid prior to the commencement of this suit. The evidence further showed, without conflict, that when Dixon bought the mule from Dunn he also bought another mule and a wagon from him, and gave him his duebill for $550 for the purchase money;

[Teat v. Chapman & Co.]

that Dunn assigned the duebill to appellees, and that appellees collected the money from Dixon, but the evidence is in sharp conflict as to whether appellees knew or were ever informed, until after this suit was brought, that the said $550 had included in it the purchase price of said mule. The above were the substantial facts.

1. The appellant requested in writing the trial court to give to the jury the general affirmative charge in his behalf. The court refused to give this charge, and it therefore becomes necessary for us to determine whether there is shown in the present record sufficient legal evidence to have warranted the court in submitting the case to the jury. As appellees relied upon constructive, not actual, notice of the existence of their mortgage when the above sales of the mule were made, the question simply resolves itself into a determination as to whether there is any evidence tending to show that appellees' rights under their mortgage were protected by the registration laws of Alabama or of Florida. There is no evidence in the case tending to show that the mortgage was filed for record in any court of Florida authorized to receive mortgages for record, and to record them. The writing on the mortgage, which purports to show that the instrument had been filed for record in the office of the circuit clerk of Holmes county, Fla., and that it had been recorded there, proves nothing. The courts of Alabama do not take judicial cognizance of the clerks of foreign courts, or their powers.—*Ex parte Jones,* 66 Ala. 202.

If we could accept the said certificate as evidence that the instrument had actually been filed and recorded in the circuit court of Holmes county, Fla., this would not help the appellees. There is no evidence in the record showing or tending to show that there was any authority, under the laws of Florida, for that pa-

[Teat v. Chapman & Co.]

per to be so filed or recorded, or what, if any, legal effect, such filing and recording had upon such instrument. The courts of Alabama do not take judicial notice of the statutes, or of the opinions or decisions, of other states.

The judicial decisions and opinions of the courts of other states are constantly resorted to as authorities on questions of law, but for that purpose only. For the purposes of evidence, the statutes, decisions, judicial opinions, and laws of other states must be actually introduced in the trial of a case as evidence.—3 Mayfield's Dig. p. 439, and authorities cited.

This court must therefore, in the absence of the above evidence, presume that the common law prevails in Florida, and therefore that there is no law in Florida which authorized the appellees to record their mortgage in that state.

In Alabama the rule of proof in cases similar to the present is that when the sale is shown to have been made upon a valuable consideration the sale is valid against the holder of a lien upon the property sold, unless the evidence shows that, before the payment of the purchase money, the purchaser had notice, actual or constructive, of the lien. Under the evidence, none of the pruchasers of this animal had actual or constructive notice of the existence of appellees' mortgage when they bought the property. It is not contended that either of the purchasers of the animal did not pay the actual value of the animal when he bought. If either Dixon or Davis was a bona fide purchaser of the animal, then appellant's title to the animal was good against the claims of appellees. After property has passed into the hands of a bona fide purchaser, every subsequent purchaser stands in the shoes of such bona fide purchaser, and is entitled to the same protection

[Teat v. Chapman & Co.]

as the bona fide purchaser, irrespective of notice.—
24 Am. & Eng. Ency. Law, p. 1176, and authorities cited.

It follows, therefore, that under the undisputed evidence in this case the appellant was entitled to the general affirmative charge which he requested the trial court to give to the jury in his behalf.

The counties of Holmes, Fla., and Geneva, Ala., adjoin. The record shows that the business relations of the people of those two counties are intimate and constant, and we are satisfied that the failure of this record to contain evidence of the laws of Florida with reference to the registration of mortgages, showing the right to record such instruments and the effect of such registration upon them, was due to the intimate knowledge, as matter of law, of the counsel on both sides of this case, and of the judge who presided at the trial, of the laws of Florida on the subject, rather than to the absence, as a matter of fact, in Florida of such laws. For this reason we are satisfied that, on the next trial of this case, the omission above pointed out, which is fatal to appellees' case in its present aspect, will probably be supplied by the introduction of evidence on the subject. For this reason we deem it proper to discuss some of the other questions presented by the record.

2. The evidence, as above stated, shows without dispute that Dunn, one of the mortgagors, sold the mule, along with another mule, to Dixon in the early part of 1906, for $550, taking his duebill therefor and turning it over to appellees, and that appellees collected and retained the money. There is a sharp dispute as to whether appellees authorized the sale of the mule, or whether they knew that the money paid them by Dixon included the purchase money for the mule. If appellees authorized the sale of the mule, or if, not having authorized it, they knew when the money was paid them

by Dixon that they were receiving from Dixon the purchase price of the animal, they are estopped from maintaining this suit.

If, however, appellees, without a knowledge of the sale of the mule, and without knowledge that they had been paid his purchase price by Dixon, did in fact receive from Dixon, when he paid them the $550, the purchase price of the mule, and said purchase price represented the fair value of the mule when Dixon bought him, then, if appellees did not know of these facts until after the suit was brought, they are entitled, unless there is some equitable reason to the contrary not appearing from the present record, to recover of appellant nominal damages merely.

An action on the case is an equitable action. It was formed to meet those cases of tort for which the law had been unable to declare a more convenient remedy, and under it justice and right, according to the conscience of the plaintiff's right to recover, are administered after the methods employed by the law in its corresponding form of action ex contractu, "the action for money had and received." To this case equitable principles must be applied, and it would be inequitable and unjust to permit the appellees to recover of a vendee of Dixon the value of the animal, when they had already, even without their knowledge, received from Dixon, and retained it in their business, the fair purchase price of the mule when Dixon became the purchaser of it. Appellant, on this question, stands in Dixon's shoes, and if this was a suit against Dixon, the law would not allow appellees to retain Dixon's money, paid by him for the mule, and recover out of Dixon the value of the mule, unless there existed some substantial equitable reason therefor.

[Teat v. Chapman & Co.]

On the theory that the evidence on the next trial develops that appellees can maintain this suit because of Dixon's knowledge, actual or constructive, of their lien, or on account of the lack of knowledge by appellees of the sale of the mule or the payment to them of the purchase money, when Dixon bought the mule he was guilty of a tort against the appellees. Because of that tort, appellees are authorized to sue, but they are not entitled, in any event, to more than nominal damages, if the evidence shows that they have already received, even without their knowledge, the full fair value of the mule, actually paid to them by Dixon. If the purchase price of the mule, included in the $550, was not its actual value, then, under the assumption that appellees are shown on the next trial to be entitled to recover anything, they will only be entitled to recover the difference between the purchase price of the mule, as paid by Dixon, and interest from the day they received it, and its actual value at the time appellant sold it, and interest on such sum to the date of trial. If it develops that appellees received no money from Dixon which represented the purchase money of the mule, the doctrines above announced will not apply; and if it should develop that, as between Dixon and appellees, the appellees might recover, nevertheless, if Davis is shown, under the rules announced in section 1 of this opinion, to have been a bona fide purchaser of the animal without notice, actual or constructive, when he acquired the animal from Dixon, then the appellees cannot recover, as appellant stands in the shoes of Davis as a purchaser from him. Dixon's title might have been charged with infirmities of which Davis had no knowledge, actual or constructive, and if so appellant's title cannot be charged with such infirmities.

3.    The evidence tends to show that when Dixon bought the mule he was living in Geneva county, Ala.; that he owned it six months; and that he made a crop with it.    The evidence fails to show whether Dixon bought the mule in Florida or in Alabama.  If he bought it in Florida, and the evidence, on the next trial, shows that the mortgage was recorded there, and what the effect of the Florida registration laws, if there are such laws in Florida, is on such instruments, the validity of his purchase, so far as constructive notice is concerned, will be governed by the laws in Florida; but  if he bought the animal in Alabama, and kept and used it in Alabama, then he was not chargeable, under  our laws, with constructive notice, because the  mortgage was not recorded in Alabama until 1909, more than three years after his purchase.  If, however, Dixon and Davis bought the animal under such circumstances as rendered them not bona fide purchasers, and  Dixon did not pay to appellees the purchase money for the mule, then appellant is liable for the value of the animal.  He bought it within less than three months before the mortgage was recorded in Alabama, and bought at his peril.—Code, § 3386.

4.    Under the evidence in this case, the appellant was, if liable at all, liable for a destruction of appellees' lien.  He had, without the knowledge or consent of appellees, if they are entitled to recover, sold property upon which they had a lien and by virtue thereof had, as the proceeds of said sale, money which, ex equo et bono, belonged to appellees.  It will not be contended that if appellees' mortgage was a mortgage conveying the legal title, the appellant, under appellees' theory of the case, would not, by selling the property, have been guilty of a conversion of the property.  The appellees' mortgage was a mortgage in equity, and the

[E. E. Forbes Piano Co. v. H. C. & W. B. Reynolds.]

sale by appellant of the mule was, if it was any viola-
tion of appellees' rights, a conversion on equitable prin-
ciples of the property.    The doctrines announced in
*Ehrman v. Oats,* 101 Ala. 604, 14 South. 361, and *Bar-
nett v. Warren,* 82 Ala. 557, 2 South. 457, are entirely
consistent with our views of the law on this subject,
and their reasoning supports the opinion we above ex-
press.

5.   The question as to whether or not the statute of
limitations of one year has any applicability to the facts
in this case is not before us for review.    Failure to
plead the statute of limitations is a waiver of the de-
fense.—*Garrison v. Lumber Co.,* 111 Ala. 311, 20 South.
427.

For the error pointed out, this case is reversed and
remanded.

Reversed and remanded.